**TRANS–CAR PURCHASING, INC.,**
Plaintiff-Appellee,

v.

**SUMMIT FIDELITY & SURETY COMPANY, Defendant-Appellant.**

**TRANS–CAR PURCHASING, INC.,**
Plaintiff-Appellant,

v.

**SUMMIT FIDELITY & SURETY COMPANY, Defendant-Appellee.**

**Nos. 18871, 18872.**

United States Court of Appeals, Seventh Circuit.

Dec. 29, 1971.

Leroy P. Vital, Rogers, Garnett, Harth, Vital & Stroger, Chicago, Ill., for plaintiff-appellee.

Julius Lucius Echeles, William E. Lasko, II, Chicago, Ill., for defendant-appellant.

Before HASTINGS, Senior Circuit Judge, and FAIRCHILD and STEVENS, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Trans-Car Purchasing, Inc. (Trans-Car), an Illinois corporation, brought this diversity action against Summit Fidelity & Surety Co. (Summit), an Ohio corporation, for indemnification under a bond issued to Trans-Car by Summit. In a bench trial, the federal district court entered findings of fact and stated conclusions of law favorable to Trans-Car and entered judgment against Summit in the amount of $10,432, and costs. Summit's motion to amend the findings of fact and judgment was denied by the trial court. Both parties have appealed.

The question presented for review in appeal No. 18871 is whether there was sufficient credible evidence to support the trial court's judgment. In No. 18872, the issue is whether the trial court properly refused admission into evidence plaintiff's Exhibit No. 10, a financial analysis of Trans-Car prepared by its treasurer.

In March 1968, defendant Summit issued a Position Schedule Fidelity Bond to insure plaintiff Trans-Car for a period of one year to the extent of $20,000 against "all direct losses" which its president and general manager may cause to Trans-Car through "larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, wilful misapplication, or any other act of fraud or dishonesty." At the time of the issuance of the bond and thereafter for the period in question, third-party defendant Thaddeus C. Cansler[1] was the president and general manager of Trans-Car.

In February 1968, Cansler organized Trans-Car and brought in Mr. and Mrs. Occomy, Jones and Cooper, as stockholders and members of its board of directors. The business of Trans-Car was to act as an agent for prospective purchasers of used cars. For a fee, Trans-Car would find the specified car, pay for it with money from its revolving funds provided by certain parties and arrange financing for the purchaser. No one except Cansler was familiar with the automobile retailing business, so he was given a free hand in its operation.

As concerned stockholders, the board of directors of Trans-Car, from Febru-

---

1. Although, in a third party action, the trial court found against Cansler in the sum of $10,432 plus costs in favor of Summit, Cansler's adverse decision is not involved in these appeals.

ary 1968 to July 20, 1968, made numerous demands upon Cansler for an accounting. All such demands were either ignored or met with the response, in substance, that he knew how to run the business and they should mind their own business. Cansler did bring in an accountant, DeVine, who from February through April attempted to set up a system of accounting for Trans-Car. DeVine was unable to do so because certain check stubs were missing and he was unable to reconciliate the bank statements. Also, Cansler refused to cooperate with him. During this same period, Cansler was also a stockholder and sales agent for Imperial Motors.

The trial court found that Cansler had fraudulently misappropriated money from Trans-Car in two separate instances. The first instance involved the payment of $8132 by Cansler from funds of Trans-Car to a Mrs. Miller. Miller had extended Trans-Car a line of credit for one of its revolving funds. Imperial Motors owed $8132 to Miller. She threatened to cut off funds to Imperial Motors if this debt was not paid. To prevent this, Cansler caused a cashier's check for the sum of $8132, to be drawn on the account of Trans-Car and sent to Miller.[2] This transaction was without the knowledge or consent of the board of directors of Trans-Car. Trans-Car has never been repaid this sum of money, either by Miller or Cansler.

The trial court found that the second fraudulent misappropriation occurred July 20, 1968, just after Cansler had been dismissed as president and general manager of Trans-Car at a meeting of the board of directors. At this meeting

Cansler told the board that Trans-Car had an interest in a 1968 Pontiac Firebird which was at a garage. In fact, Cansler had already consummated the sale of this car to a Mr. Esserman on the previous day, July 19, 1968. One-half hour after leaving this meeting, Cansler went to Esserman and had him make out two checks in the amounts of $500 and $1800 in Cansler's name in payment for the Firebird. Cansler had no authority to have such payments made to him and he has never repaid this $2300 to Trans-Car.

In face of all these facts, Summit now urges us to set aside the trial court's findings of fact and reverse the judgment for $10,432 plus costs.[3] We are mindful that Rule 52(a) of the Federal Rules of Civil Procedure provides: " * * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

Summit asserts that the uncontradicted testimony of Cansler and Miller establishes that the two transactions, above described, were in payment of debts owed to them by Trans-Car. Cansler testified that Trans-Car owed some money and that he had the two checks made out in his name because he knew that Trans-Car was not going to pay him.[4] Also, Miller testified that Trans-Car owed her money when she received the check for $8132. *Supra*, n. 2. Thus, Summit urges that these two transactions were not fraudulent in nature but rather were payments of debts.

■ Summit's position is untenable. The trial court expressly found that

2. As a witness for the defense, Miller at first testified that she had thought the check (which on its face did not indicate who it was from) was from Imperial Motors in payment of its debt to her of $8132. Later, she changed her mind and said she used it as a credit against the $5000 or $6000 Trans-Car owed her. Still later on cross-examination, she stated: "I really don't know who he [Cansler] was acting for. He was just paying me the money, to keep me from losing it,

because if he didn't, I wasn't going to loan him no more money."

3. The $10,432 is the sum of the $8132 transfer to Miller and the $2300 misappropriation in Cansler's name.

4. Concerning this alleged debt, Cansler's testimony is inconsistent. Early in his testimony, he testified that he took the $2300 because Trans-Car owed him $2800 or $2900. Later, he expanded this debt to $4100.

Cansler and Miller were "not trustworthy witness" and disregarded their testimony. Assuming *arguendo* that Trans-Car may have owed Cansler some money, his misappropriation of $2300 after he had been relieved of his duties was no less fraudulent. This transaction was without authority and for his own personal benefit to the prejudice of the rights of others. Similarly, the unauthorized use of Trans-Car funds in the amount of $8132 to placate Miller for the benefit of Imperial Motors was clearly a fraudulent misapplication. We conclude, therefore, that the relevant findings of fact challenged by Summit are not clearly erroneous. There is ample competent evidence in the record, including the testimony of seven witnesses, other than Cansler and Miller, together with supplementary exhibits, to fully support such challenged findings. The trial court did not err in making such findings.

In its cross-appeal, Trans-Car asserts error arising from the denial of admission into evidence of its Exhibit No. 10. If admitted, Trans-Car contends that the amount of its recovery against Summit would have been enlarged to the full amount of the bond limitation.[5]

It appears that Thigpen, as treasurer of Trans-Car, at someone's behest, undertook the preparation of a "financial analysis report" of the condition of Trans-Car. Thigpen had only one course in accounting at a business school and one at a junior college. He was not a trained accountant but rather was primarily experienced as a real estate manager. Admittedly his report was not an audit and could not have been because of the lack of Trans-Car's internal accounting controls.[6] In fact, some of Trans-Car's relevant business records were available to Thigpen, but not used, and others were discovered after the report was completed. Thigpen obviously constructed his report from whatever invoices, vouchers and check stubs he could find.[7]

Trans-Car argues that this report was admissible under the "business entry rule, the shop book rule, Illinois Statute, Chap. 51, Depositions and Evidence Sec. 3, Smith-Hurd Ann.Stat., or as an adoptive admission." In our considered judgment none of these rules are relevant or applicable.

It should be noted that the trial court denied admission of the report [8] but did not refuse the original records upon which the report was based.[9] Admission of this report was denied because it was irrelevant to the issue of fraudulent misappropriation by Cansler and for the reason that Trans-Car did not lay a proper foundation for its admission as a complete summary of the transactions of Trans-Car.

■ Although this financial analysis may have tended to prove mismanagement or faulty business acumen on the

---

5. It is argued that Exhibit No. 10 disclosed that Cansler had an obligation to account to Trans-Car for an amount of $29,344.03.

6. Trans-Car had no general accounting journal, no check register, no journals showing accounts payable or receivable, and no accounting ledgers of any kind.

7. The opening statement of the report itself specifies the factual limitations of the report:
 "The accompanying schedules are based on information available to the undersigned. In some instances, the data was gathered piecemeal without supporting documentation, accordingly,

assumptions had to be made with respect to the accurate classification of expenditures. It should also be noted that the inadequacy of detail information *may lead to improper conclusions* * * *."

8. The court denied admission of the report to prove fraud as against Summit, but admitted it as against third-party defendant Cansler.

9. The court stated: " * * * I refused that summary [the report] but I did not refuse the original records that summary was made from. They were not tendered."

part of Cansler, it was not competent to prove that Cansler had *fraudulently* misapplied funds of Trans-Car.

 It is well settled that "[t]he determination of the relevancy of proof offered at the trial is a matter resting largely within the sound discretion of the trial court, and is not ordinarily reversible upon appeal." Beaty Shopping Center, Inc. v. Monarch Ins. Co. of Ohio, 4 Cir., 315 F.2d 467 (1963). In the instant action Trans-Car was not suing Cansler for mismanagement but rather was suing Summit for indemnification arising from the *fraud* of Cansler. Under the bond, Summit was liable only for fraudulent misapplication of funds and not for business loss or bad judgment. The basis of Trans-Car's complaint was fraud and the report, offered as plaintiff's Exhibit No. 10, clearly does not rise to the dignity of admissible proof of fraud as against Summit.

 The discretion of the trial court in the admission and exclusion of evidence, when exercised within normal limits, should not be disturbed on appeal. Brigham Young University v. Lillywhite, 10 Cir., 118 F.2d 836, 841 (1941) and Burger Chef Systems, Inc. v. Govro, 8 Cir., 407 F.2d 921, 930 (1969).

We conclude that the exclusion of this "analysis of the financial condition" of Trans-Car was entirely proper and within the wide latitude of discretion given to trial courts in such matters.

In any event "no error in the admission or exclusion of evidence is ground for reversal unless refusal to take such action appears to the Court to be inconsistent with substantial justice." Prater v. Sears, Roebuck and Co., 6 Cir., 372 F.2d 447 (1967). In light of the nature of this report and the facts heretofore discussed, we find no such injustice in this appeal.

Accordingly, we affirm in all respects the judgment appealed from.

Affirmed.