Sandra Lee KAPLAN,
Plaintiff-Appellee,

v.

INTERNATIONAL ALLIANCE OF THEATRICAL AND STAGE EMPLOYEES AND MOTION PICTURE MACHINE OPERATORS OF the UNITED STATES AND CANADA, and Local 659, International Photographers of the Motion Picture Industries, Defendants-Appellants.

Nos. 73–2555, 73–3392.

United States Court of Appeals,
Ninth Circuit.

Nov. 5, 1975.

T. J. Sargent (argued), of Bodkin, Breslin & Luddy, Los Angeles, Cal., for defendant-appellant in 73–2555.

Robert W. Gilbert (argued), of Robert W. Gilbert & Assoc., Beverly Hills, Cal., for defendant-appellant in 73–3392.

Arthur E. Schwimmer (argued), Encino, Cal., and Arlene Colman-Schwimmer and Ellis J. Horvitz, Encino, for plaintiff-appellee.

Gerald D. Letwin (argued), Washington, D. C., for amicus curiae Equal Employment Opportunity Commission.

OPINION

Before WRIGHT and SNEED, Circuit Judges, and POWELL,* District Judge.

POWELL, District Judge:

This is an appeal from a judgment holding that the appellants discriminated against appellee solely on account of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, e–1 to e–17. The district court declared

* Honorable Charles L. Powell, Senior United States District Judge, Eastern District of Washington, sitting by designation.

invalid a provision of a union collective bargaining agreement and granted damages and injunctive relief to appellee. Appellants are International Alliance of Theatrical and Stage Employees and Motion Picture Operators of the United States and Canada (I.A.T.S.E. or the International) and Local 659, International Photographers of the Motion Picture Industries (Local 659). Appellee is Sandra Lee Kaplan, a white female still photographer residing in the Los Angeles, California area. Leave to intervene as amicus curiae was granted to the Equal Employment Opportunity Commission.

Various employees in the theatrical, stage and motion picture industry are represented by the International and its local affiliates. Local 659 represents the cameramen and photographers for the Los Angeles, California area and the thirteen Western States. The International is the exclusive bargaining representative for all its affiliates. It negotiates a basic agreement with the Association of Motion Picture and Television Producers, Inc. (the producers' association or employers) which includes six major film studios and independent film producers. A separate agreement with the employers is negotiated by the International on behalf of and together with each of its local affiliates. The terms are subject to the basic agreement, but add provisions particularized to the requirements of the affiliate's crafts classifications.

Local 659's agreement with the producers' association establishes an Industry Experience Roster (the Roster). It is used to classify employees as to seniority and priority in employment opportunity and is maintained by the producers. Eligibility for classification on the Roster is based on work experience during the preceding 365 days and is evaluated by the Industry Cameraman Qualification Committee, appointed by the producers' association according to the terms of the basic agreement. Union membership is not required for eligibility, but an individual must become a union member after placement on the Roster.

Employers must give preference in hiring to Roster individuals. Once the Roster has been exhausted, an employer may secure employees from any source.

Local 659's collective bargaining agreements do not condition employment on union membership, but permit a new employee a 30 day grace period following commencement of employment before union membership is required for continued employment. Prior to 1949, when the Roster was adopted, the union was a "closed shop" comprised only of male members. In November, 1972, Local 659's membership totalled 1,455, eight of whom were female. Of the eight females, six are not included in Roster classification.

Prior to 1966, appellee was employed with a production company. In late 1966, she telephoned Local 659 to request an application for union membership. She testified that she was told that the "duty roster" was full and new applications were not being accepted. She intensified her efforts in 1969, and though persistent, met with no success and limited assistance. She testified that numerous employers believed that she was a qualified still photographer, but would not hire her because she was non-union.

In 1969, appellee was hired in Los Angeles as a still photographer subject to approval of New York Local 644, since the motion picture was to be filmed in New York. For undetermined reasons, she was not employed. Appellee further testified that she qualified on four separate occasions as a still photographer, but was not employed because she did not belong to a union.

Appellee subsequently filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) alleging discrimination in union membership and referral for employment on account of sex. On September 20, 1971, the EEOC gave appellee statutory notice of her right to bring a Title VII action.

## I.

### Did the Trial Court Err in Finding That Local 659 Violated Title VII?

■■■ Local 659 argues that it was clearly erroneous as a matter of law for the district court to base its finding of disproportionate female membership in the union on statistical evidence drawn from general population percentages. Local 659's argument is without merit. The use of statistical evidence is recognized as a means of proof in Title VII cases. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Statistics often supply evidentiary support for claims of unlawful discrimination. *Marquez v. Omaha District Sales Office, Ford Division of Ford Motor Co.*, 440 F.2d 1157, 1161 (8 Cir. 1971). Courts have relied upon statistical evidence as a basis for allocating the burden of proof. *United States v. Ironworkers Local 86*, 443 F.2d 544, 551 (9th Cir. 1971), *cert. denied*, 404 U.S. 984, 92 S.Ct. 447, 30 L.Ed.2d 367 (1971). Upon showing wholly disproportionate female membership in a union in comparison to the available female work force in a demographic area, an inference arises that the sex imbalance results from discrimination, and the burden of going forward and the burden of persuasion is shifted to the accused, for such a showing is sufficient to establish a prima facie case of sex discrimination. *United States v. Hayes International Corp.*, 456 F.2d 112, 120 (5 Cir. 1972); *United States v. Ironworkers Local 86, supra* 443 F.2d at 551. Local 659 notes that the absence of variables properly correlating the statistics could undermine the reasonableness of the inference drawn therefrom. However, there was evidence indicating that qualified female still photographers were available in the Los Angeles area,[1] and no individual on the 60 member Roster was a female movie still photographer.[2] The basing of its finding of discrimination in part on these statistics was not clearly erroneous. *Sessions, Inc. v. Morton*, 491 F.2d 854, 858 (9th Cir. 1974).

The record discloses that the district court did not rely exclusively on statistical evidence to establish a Title VII violation, but supported the finding on specific discriminatory acts of Local 659. Viewing the evidence, as this court must, most favorably to the party who prevailed below, we conclude that the finding of specific discriminatory acts by Local 659 is sufficiently supported.

When the Roster was adopted in 1949, Local 659 was a "closed shop" comprised solely of male members. Signatory employers continued to hire only union members, and Local 659 was aware of that fact. The 60 member still photographer Roster contained only male members. Testimony indicated that Local 659 waived its experience requirements sometimes for males, but never for females. Further testimony showed that Local 659 granted approval to hire non-union members in order to qualify them for union membership, but later withdrew approval when a non-union female was hired.

The district court did not err in finding that Local 659 violated Title VII.

## II.

### Was the International Sufficiently Named in the EEOC Charge?

The International argues that the district court never acquired jurisdiction under Title VII because the plaintiff did not name the International in the EEOC administrative charge. Thus, it maintains that it is immune from any liability in this action.

---

1. Once the inference of discrimination arises from proper statistical proof, it is defendant's burden, not plaintiff's to show the lack of qualified female still photographers in the Los Angeles area. *United States v. Hayes International Corp., supra* 456 F.2d at 120.

2. There are twelve live television still photographers in Local 659. Two of them are female. Appellee is a motion picture still photographer.

■ The EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462–63 (5 Cir. 1970); *Cox v. United States Gypsum Co.*, 409 F.2d 289, 290 (7 Cir. 1969); *Antonopulos v. Aerojet-General Corp.*, 295 F.Supp. 1390, 1395 (E.D.Cal.1968). One function of the administrative charge is to provide information to enable the EEOC to determine the scope of the alleged violation and to attempt conciliation. *Jenkins v. United Gas Corp.*, 400 F.2d 28, 30 n. 3 (5 Cir. 1968).

■ In appellee's charge filed with the EEOC under 42 U.S.C. § 2000e–5(b), the appellee identified the "discriminating Party" to be "I.A.T.S.E. LOCAL 659— INTERNATIONAL PHOTOGRAPHERS OF THE MOTION PICTURE INDUSTRIES." The crucial element of the charge of discrimination is the factual statement contained therein. *Sanchez v. Standard Brands, Inc.*, *supra* 431 F.2d at 462.³ Appellee indicated that one source of discrimination was the "exclusive referral agreement with the Studios." [C.R. 15] The International negotiates the major collective bargaining agreement with the producers. She also alleged that the "Union only has one female member and no female members in the Still Photographer's Union to which I am applying." [C.R. 15]

■ Since it is anticipated that lay persons will continue to initiate EEOC action without legal assistance, it is hypertechnical to insist on absolute compliance with formal pleading requirements. Indeed, "[i]t would falsify the Act's hopes and ambitions to require verbal precision and finesse from those to be protected, for we know that these endowments are often not theirs to employ." *Sanchez v. Standard Brands, Inc.*, *supra* 431 F.2d at 465. The administrative charge required by Title VII does not demand procedural exactness. It is sufficient that the EEOC be apprised, in general terms, of the alleged discriminating parties and the alleged discriminatory acts.

### III.

*Did the International Violate Title VII?*

The International maintains that it committed no acts, nor engaged in practices that warranted the finding that it was jointly and severally liable for damages to appellee. The district court found that the International had "assisted and encouraged the perpetuation of the discriminatory employment practices." [C.R. 253]

The International negotiates and is signatory to the basic agreement with the employers. It also negotiates and is signatory to Local 659's collective bargaining agreement that incorporates the Roster provisions questioned here. Each local affiliate must recognize "the supreme jurisdiction of the International Alliance . . . and reserv[e] to itself no rights of self government inconsistent with the Constitution and By-Laws of the Alliance." [Deft. Ex. B, p. 51] The International is empowered to revoke the charter of a local affiliate which unlawfully discriminates. If a local affiliate's agreement is determined to be contrary to or inconsistent with the International's constitution or by-laws, the International can declare it null and void. In summary, the International is empowered to remedy the misconduct of a local affiliate resulting from violation of the constitution or by-laws. The Roster provisions, therefore, may be declared null

---

3. 29 C.F.R. § 1601.11 states in part "[a] charge is deemed filed when the Commission receives from the person making a charge a written statement sufficiently precise to identify the parties and to describe generally the action or practices complained of." The Fifth Circuit has stated "[i]t is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.*, *supra* 431 F.2d at 466. *See also Oubichon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9 Cir. 1973).

and void or enforced depending on whether the International discovers some violation resulting in discrimination.

The Roster was adopted in 1949. Local 659 was comprised exclusively of white, male members. The Roster established employment priority according to accumulated employment experience in particular crafts classifications. All members of the Roster had to be employed before an employer could look elsewhere for non-union employees. Evidence indicated that female still photographers were not employed in the motion picture industry at least since 1966. Union members enjoy a preferred status in employment opportunity. However, Local 659 has pressured employers to hire union members where a non-union member was hired.

In order to qualify for membership on the Roster, appellee would have to be employed by a signatory employer for the requisite time periods once all Roster employees have been exhausted. It rarely has been exhausted, and seldom for the time period necessary to qualify appellee. The Roster has the practical effect of preventing female still photographers from gaining the experience required to become a member of Local 659 and consequently a member of the Roster. Thus, a female still photographer is both historically and currently the victim of a system that perpetuates past sex discrimination.

No matter how purely motivated the Roster provisions, they are unlawful under Title VII. "But Congress directed the thrust of the Act [Title VII] to the *consequences* of employment practices, not simply the motivation." *Griggs v. Duke Power Co.*, 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971). We hold that the International cannot claim ignorance nor escape liability from the natural consequences of the Roster provisions. By making and enforcing, albeit tacitly, a collective bargaining agreement which perpetuates past discriminatory effects, appellant International has violated Title VII. Policies and practices, however neutral on their face, are unlawful if they tend to perpetuate the effects of past discrimination. *Griggs v. Duke Power Co.*, supra 401 U.S. at 430, 91 S.Ct. 849. The policies embodied by Title VII demand that an international union closely scrutinize the practices of its local affiliates to reveal discriminatory acts or consequences. This is especially true when the local affiliate represents employees in as specialized a field as the one presented here. Moreover, there is evidence that the International approved all applications for membership in Local 659. It must have been aware or should have been aware of the wholly disproportionate female membership in Local 659 and on the Roster. The failure of an international union to act when aware of discrimination resulting from a collective bargaining agreement has been held to constitute a violation of Title VII. *United States v. Virginia Electric and Power Co.*, 327 F.Supp. 1034, 1042 (E.D.Va. 1971). *See United States v. Bethlehem Steel Corp.*, 312 F.Supp. 977, 990–91 (W.D.N.Y.1970), *modified relief*, 446 F.2d 652 (2 Cir. 1971).

A union must pay its share of the damages sustained as a result of a collective bargaining agreement which perpetuates past discrimination. *Johnson v. Goodyear Tire & Rubber Co., Synthetic Rubber Plant*, 491 F.2d 1364, 1381 (5 Cir. 1974); *Macklin v. Spector Freight Systems, Inc.*, 478 F.2d 979, 989 (D.C.Cir. 1973). The maintenance of the Roster provisions is sufficiently non-accidental to be considered intentional within the meaning of Title VII. *See Shaeffer v. San Diego Yellow Cabs, Inc.*, 462 F.2d 1002, 1006 (9 Cir. 1972). This conclusion obtains from the high degree of the International's involvement in the affairs of its local affiliates and the power it can exercise to compel observance of its constitution and by-laws.

## IV.

### *Were All Indispensable Parties Before the Court?*

Local 659 maintains that complete relief cannot be accorded all interested

parties, unless the employers are joined as parties to this action. The Roster is part of the collective bargaining agreement between Local 659 and the producers' association. Local 659 argues that the employers' interests are inextricably tied into this action. Unless joinder is required, prejudice to those interests would result.

 Whether a party is indispensable to the maintenance of an action is necessarily a practical determination not governed by rigid formula. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 116 n. 12, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). The application of Rule 19, Fed.R.Civ.P. must turn on the particular facts of each case. *LeBeau v. Libby-Owens-Ford Co.*, 484 F.2d 798, 800 (7 Cir. 1973). The concept of indispensability carries with it the elements of prejudice, equity and good conscience. *Baker v. Estate of Rosenbaum*, 58 F.R.D. 496, 498 (D.P.R.1972); *Hill & Range Songs, Inc. v. Fred Rose Music, Inc.*, 58 F.R.D. 185, 190 (S.D.N.Y.1972). Here the application of Rule 19 requires consideration of the effect on the employers of the relief granted to the appellee. If the producers' association has an interest and the relief granted "as a practical matter impair[ed] or impede[d] his [the employer's] ability to protect that interest, . . ." then the producers' association should have been joined by the district court. Fed.R. Civ.P., Rule 19(a)(2)(i).

 The Roster does benefit the producers' association by providing a labor pool from which qualified employees can be drawn. However, this benefit is not sufficiently prejudiced to require the joinder of the employers under Rule 19. Appellee asked that the Roster eligibility requirements be waived to allow her to be considered for employment by the producers' association. This would dilute potential employment opportunities for other Roster members, but not prejudice the employers. Evidence indicated that the employers considered appellee a qualified still photographer. Complete relief was accorded to all those interested without prejudice to the producers' association.

Local 659 objects to the district court's Findings 21–23 holding the Roster provisions discriminatory. It asserts employers are necessary parties because of that. Appellee never sought to rearrange the Roster. She never objected to the policies or practices of the producers' association. The district court's judgment left the Roster intact.[4] There was substantial evidence that the Roster provisions did have a discriminatory effect on appellee and females generally. That discrimination was not through the actions of the producers.

### V.

### Did the District Court Err in Its Finding as to the Minority Labor Pool Agreement?

Local 659 objects to the alleged prejudicial effect of Findings 26–27 relating to the Minority Labor Pool Agreement entered into by the United States Department of Justice and various operatives of the International, Local 659, and the producers' association. The district court found that it represented "an effort to integrate Local 659, among others." [C.R. 254] At trial, plaintiff offered documentary and oral evidence that the agreement did not contemplate the elimination of sex discrimination, but was intended only to assist ethnic and racial minorities. Local 659 maintains that the district court erred in not permitting the introduction of evidence demonstrating that the agreement constituted an attempt to eliminate all forms of discrimination.

Apparently the district court believed the evidence indicating an effort by

---

4. There is authority to permit a district court to order the non-enforcement of discriminatory provisions of a collective bargaining agreement even in the absence of a signatory employer. *See United States v. Sheet Metal Workers Local 36*, 416 F.2d at 123, 132 n. 16 (8 Cir. 1969).

**1362**

Local 659 to remedy past racial and ethnic discrimination was probative of the fact that Local 659 engaged in sex discrimination as well. There was evidence that the agreement contemplated the influx of racial and ethnic minorities into Local 659. Further evidence indicates that as a white female, appellee did not qualify for inclusion in the minority labor pool.

■ The district court's ruling to admit evidence and determine relevancy should not be disturbed unless there is a clear abuse of discretion. *Trans-Car Purchasing, Inc. v. Summit Fidelity & Surety Co.*, 454 F.2d 788, 792 (7 Cir. 1971).

## VI.

### Did the District Court Err in Finding That the Roster System Violated 42 U.S.C. § 2000e–2(h)?

■ Local 659 also objects to the district court's finding that the seniority system represented by the Roster was not "bona fide" within the meaning of 42 U.S.C. § 2000e–2(h). That section permits an employer to apply different terms, conditions, or privileges of employment pursuant to a bona fide seniority system so long as the differences do not result from intentional sex discrimination. Local 659 justifies its Roster as necessary to the preservation of employment priority rights accrued by employees during the time of increased production activity in the motion picture industry. Appellee argues that the preference provisions of the Roster perpetuate past sex discrimination and preclude further sex integration of Local 659.

Where a seniority system perpetuates the effects of past discrimination, such a system is not "bona fide" within the meaning of Title VII. *United States v. Chesapeake and Ohio Ry.*, 471 F.2d 582, 587 (4 Cir. 1972), *cert. denied*, 411 U.S. 939, 93 S.Ct. 1893, 36 L.Ed.2d 401 (1973); *United States v. Bethlehem Steel Corp.*, 446 F.2d 652, 659 (2 Cir. 1971). We have already determined in Part III of this opinion that the present seniority system represented by the Roster perpetuates past discriminatory effects.

## VII.

### Was the District Court's Decree Unconstitutionally Vague?

In its judgment, the district court decreed that Local 659 shall accord appellee "such Seniority Rating in Local 659 of the I.A.T.S.E. as she would have had if she had been accepted to memership in 1966." [C.R. 259] Local 659 points out that Roster seniority rating under the collective bargaining agreement is wholly unrelated to union membership and that only the producers' association can grant a rating to a qualified individual.

Local 659 was instrumental in controlling the application of the Roster. "The Roster, by agreement, is supposed to be maintained by the Association. However, in practice, employers, when they are in need of cameramen, normally call Respondent [Local 659], who keeps the roster and list of available employees current." *International Photographers of the Motion Picture Industries Local 659*, 197 NLRB 1187, 1188 (1972), *enf'd*, 477 F.2d 450 (D.C.Cir.1973), *cert. denied*, 414 U.S. 1157, 94 S.Ct. 914, 39 L.Ed.2d 109 (1974). Seniority ratings of individuals are passed on by the producers' officials and not Local 659. But employers' actions are not in question here.

## VIII.

### Was the Award of Damages for Loss of Back Pay Speculative?

■ Local 659 objects to the district court's award of damages in the sum of $15,000.00 as speculative. Appellee sought an award of $25,408.97. The evidence showed that appellee lost employment opportunities in four separate motion pictures. Evidence also indicated the rate of pay received by the photographers hired in appellee's stead as union photographers for these motion pictures. The claim for damages was "based on fixed wage rates and ascertainable periods of work." *Robinson v. Lorillard Corp.*, 444 F.2d 791, 804 (4 Cir. 1971), *cert. dismissed*, 404 U.S. 1006, 1007, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971, 1972). No mathematical certainty is required in

the computation. *See Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 721 (7 Cir. 1969). The discretion to award back pay for violations of Title VII is statutorily provided. 42 U.S.C. § 2000e–5(g). The district court has the discretion to determine the amount to be awarded.

 Local 659 argues, however, that appellee had a duty to mitigate her damages and asserts that whether her efforts were reasonable under the circumstances is a question of fact.[5] However, Local 659 has the burden of demonstrating that appellee could have mitigated her damages. *See Sparks v. Griffin*, 460 F.2d 433, 443 (5 Cir. 1972); *Hegler v. Board of Education*, 447 F.2d 1078, 1081 (8 Cir. 1971). Local 659 has not provided evidence indicating an opportunity for mitigation. To the contrary, there is evidence that appellee sought employment both in and out of the Los Angeles area. The discriminatory acts practiced by Local 659 to foreclose employment opportunities to appellee cannot now be used to Local 659's advantage. A finding of discriminatory acts requires an award of back pay unless reasons exist "which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (footnote omitted).

## IX.

### *Was the Award of Attorney's Fees and Costs Proper?*

 Appellants challenge the trial court's procedure in awarding attorney's

fees and costs. They argue that the award without a hearing is a denial of due process and abuse of discretion. 42 U.S.C. § 2000e–5(k) permits the district court, in its discretion, to allow the prevailing party reasonable attorney's fees. Here the trial judge presided over a six day trial. He heard testimony and reviewed exhibits, pleadings, affidavits and other documents. In such circumstances, a trial judge can adequately determine compensation for effort expended by appellee's attorney in presenting the case. *See McKittrick v. Gardner*, 378 F.2d 872, 874–75 (4 Cir. 1967). There was no error in the trial court's award of fees and costs. *Rosenfeld v. Southern Pacific Co.*, 519 F.2d 527 (9 Cir. 1975); *Schaeffer v. San Diego Yellow Cabs, Inc.*, 462 F.2d 1002 (9 Cir. 1972).

## X.

### *Was the District Court's Reservation of Jurisdiction Pending Appeal Proper?*

 The appellants also challenge the district court's reservation of jurisdiction to award additional damages, attorney's fees, and costs on appeal if appropriate. Because appellee's damages from continued unemployment may accumulate during the prosecution of this appeal, as will her attorney's fees and her costs, the district court reservation of jurisdiction was proper. *See Reed v. Arlington Hotel Co.*, 476 F.2d 721, 726 (8 Cir. 1973), *cert. denied*, 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 103 (1973); *Rosenfeld v. Southern Pacific Co.*, 293 F.Supp. 1219, 1227 (C.D.Cal.1968), *aff'd* 444 F.2d 1219 (9 Cir. 1971).

Affirmed.

SNEED, J., concurs in the result.

---

**5.** 42 U.S.C. § 2000e–5(g) provides, in part, "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."