Leonard A. JOHNSON,
Plaintiff–Appellant,

v.

Frank PALMA, Individually and as representative of IUE Local 509 the International Union of Electrical, Radio and Machine Workers, Defendants–Appellees.

No. 515, Docket 88–7846.

United States Court of Appeals,
Second Circuit.

Argued Dec. 14, 1990.

Decided April 22, 1991.

Georgene M. Vairo, New York City (Karl Pflanz, Avery Ryan, Legal Assts., on the brief), for plaintiff-appellant.

Robert Friedman, Washington, D.C. (Stephen D. Rogoff, Rochester, N.Y., of counsel), for defendants-appellees.

Before KEARSE, PIERCE and MINER, Circuit Judges.

MINER, Circuit Judge:

Appeal from a judgment, entered on August 25, 1988, in the United States District Court for the Western District of New York (Larimer, J.) dismissing Title VII claims against IUE Local 509 ("Local 509" or "union"). The district court found on motion for summary judgment that plaintiff-appellant Leonard A. Johnson had failed to make out a prima facie case of retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1988) against Local 509. The district court also found that, even if Johnson had made out a prima facie case, Local 509 had a legitimate reason for refusing to press forward with Johnson's grievance. Johnson's appeal also encompasses an earlier order, entered on March 15, 1988, dismissing his Title VII claims against the International Union of Electrical, Radio and Machine Workers (the "International Union") on the ground that neither the complaint filed with the New York State Division of Human Rights ("DHR") nor the complaint filed with the Equal Employment Opportunity Commission ("EEOC") named the International Union as a respondent. Finding the failure to name a party a jurisdictional defect, the court held that the action may not be maintained against the International Union.

On appeal, Johnson specifically challenges the district court's finding that he failed to establish a retaliatory motive on the part of the union and therefore failed to make out a prima facie case of retaliation. He also challenges the court's finding that the union's acquiescence in the policy of Johnson's employer, Delco Products ("Delco"), served as a legitimate, non-discriminatory reason for refusing to proceed with the grievance process. Regarding the dismissal of the claim against the International Union, Johnson maintains that the International Union had knowledge of the administrative complaint and thus may be sued for retaliation. We hold that the district court erred in granting summary judgment for the union on the retaliation claim because Johnson presented a prima facie case and because the union failed to articulate a legitimate reason for its refusal to proceed with Johnson's grievance. We also conclude that the trial court properly dismissed the claims against the International Union because it was not named in the administrative agency charges.

## BACKGROUND

Leonard A. Johnson was employed by Delco, a division of General Motors Corporation, for more than twenty years. During his term of employment, Johnson was a member of Local 509, a local affiliate of the International Union. On September 23, 1979, Delco suspended him for thirty days for "habitually reporting late for work." Johnson immediately filed a grievance, claiming that he had been treated unfairly. At the expiration of the thirty-day suspension period, Johnson returned to work. However, he was fired on December 10, 1979 for arriving late for work three times in one week. Shortly thereafter, Johnson filed a complaint with the DHR against Delco, alleging that he was fired on account of his race. *See* N.Y.Exec.Law § 296 (McKinney 1982 & Supp.1991).

Frank Palma was the "Chairman of the shop committee" of Local 509. He was responsible for handling grievances filed by union members at the more formal stages of the grievance process. The first two steps of the grievance procedure are informal in nature and are handled by Delco employees. The third and fourth steps, the more formal stages of the grievance process, as well as subsequent arbitrations, are handled by Palma.

After obtaining unfavorable results in the first three steps of the process, Johnson filed a notice of appeal to the fourth step. Delco had a policy that it would not proceed with the grievance procedure when a complaint was pending before the DHR. Palma informed Johnson that, because of

Delco's policy, he would not take the grievance through the fourth step unless Johnson withdrew his complaint. Desiring to go forward with the grievance procedure, Johnson withdrew his DHR complaint. The grievance procedure then proceeded to the fourth step. On March 20, 1980, Johnson lost the fourth step. Palma proceeded to the fourth and a half step, in which the company and the union attempt to resolve the grievance through formal settlement discussions. At that point, Palma indicated to Johnson that Delco had agreed to reinstate Johnson without backpay or seniority, but Johnson refused to accept the offer. The union then decided that Johnson's grievance could not proceed successfully through arbitration and withdrew the grievance.

Meanwhile, on March 12, 1980, dissatisfied with the progress of the grievance procedure, Johnson had reinstated his DHR complaint against Delco and had filed a new DHR complaint against the union. In the complaint against the union, Johnson alleged that by refusing to proceed with the grievance process unless he withdrew his DHR complaint, the union had retaliated against him for engaging in protected activity. The complaint named "International Union of Electrical, Radio and Machine Workers, AFL–CIO–CLC, Local 509" as respondent.

Johnson alleged that during a meeting with Palma and Delco employees, he was "pressured" by them to withdraw his new complaint against Delco. He also claimed that both before and during the fourth step, he was advised that he would not receive adequate union representation unless he withdrew the new complaint against Delco since "[the union] had established a good working relationship with representatives of the company and that such complaint ... against the company was 'bad form' and would not help them reach a resolution." Palma asserts that his decision not to proceed with the arbitration was made before learning that Johnson had filed a new complaint.

The DHR dismissed the complaint against Delco but not against Local 509.

Thereafter, Johnson filed a charge with the EEOC. On February 13, 1986, the EEOC issued to Johnson a notice of right to sue. Johnson commenced an action in the district court against Palma, individually and as a representative of Local 509, Local 509 and the International Union, pleading claims under 42 U.S.C. §§ 1981, 1982, 1983 (1988), 42 U.S.C. § 2000e *et seq.* and pleading a violation of his fifth amendment rights, for retaliating against him for filing a complaint with the DHR based on racial discrimination by Delco. Johnson specifically alleged that the defendants committed two acts of retaliation. The first act involved the union's refusal to proceed with the grievance process through the fourth step unless Johnson withdrew his initial DHR complaint. The second retaliatory act allegedly occurred when the union decided not to take Johnson's grievance to arbitration until he withdrew his second complaint.

In a bench decision on a motion for summary judgment, the district court dismissed, as against all defendants, the fifth amendment claim for lack of state or federal action and the section 1981, 1982 and 1983 claims for lack of state action and because they were barred by the New York statute of limitations. Finally, the court dismissed the complaint against the International Union and Palma on the Title VII claims on the grounds that neither the DHR nor the EEOC charge named the International Union or Palma as respondents; that there was no evidence that the International Union acted either alone or in concert with Local 509 in declining to process Johnson's grievance; and that no evidence was presented indicating that Local 509 acted as an agent for the International Union. The court reserved decision on the remaining Title VII claim against Local 509.

The district court, in a Decision and Order, granted summary judgment on the remaining claim in favor of Local 509 on the ground that Johnson "ha[d] failed to establish either directly or indirectly a causal connection between defendant's refusal to proceed with his grievance and his filing a complaint against Delco." The

court found that the decision not to proceed with the grievance because of company policy was insufficient to establish retaliatory animus. Finally, the court concluded that even assuming Johnson had presented a prima facie case of retaliation, the decision not to proceed in light of company policy served as a legitimate, nondiscriminatory reason for not going forward with the grievance procedures. Johnson appeals from the judgment dismissing the Title VII claims against Local 509 and the International Union.

For the reasons that follow, we vacate the portion of the judgment dismissing the Title VII claim against Local 509, but affirm the portion of the judgment dismissing the Title VII claim against the International Union.

## DISCUSSION

I. *Dismissal of Title VII claim for failure to establish a prima facie case*

■ Under Title VII, to make out a prima facie case of retaliation, a plaintiff must show participation in protected activity known to the defendant, an employment action disadvantaging the person engaged in the protected activity, and a causal connection between the protected activity and the adverse employment action. *See, e.g., Hollander v. American Cyanamid Co.,* 895 F.2d 80, 85 (2d Cir.1990); *DeCintio v. Westchester County Medical Center,* 821 F.2d 111, 115 (2d Cir.), *cert. denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); *Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 46 (2d Cir.1980). A causal connection may be established either *"indirectly* by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or *directly* through evidence of retaliatory animus directed against a plaintiff by the defendant." *DeCintio,* 821 F.2d at 115 (citations omitted) (emphasis in original). Once a prima facie case is made, the burden of production "shifts to the defendant to articulate a 'legitimate, nondiscriminatory reason' for its actions." *Taitt v. Chemical*

*Bank,* 849 F.2d 775, 777 (2d Cir.1988) (citation omitted). Finally, should the defendant meet the burden of coming forward with a permissible reason for its actions, the plaintiff must then show that the reasons advanced were pretextual. *Sumner v. United States Postal Serv.,* 899 F.2d 203, 209 (2d Cir.1990); *see generally* J.G. Cook & J.L. Sobieski, Civil Rights Actions ¶ 21.22[F] (1990).

■ It is not disputed by the parties that Johnson engaged in protected activity when he filed a complaint with the DHR, nor is it denied that the union knew of the filing of the DHR complaint against Delco. *See* 42 U.S.C. § 2000e–3(a); *Sims v. Mme. Paulette Dry Cleaners,* 580 F.Supp. 593, 595 n. 7 (S.D.N.Y.1984). Regarding the second element of a Title VII retaliation claim, the district court found that "Local 509's refusal to proceed with plaintiff's grievance until he withdrew his discrimination complaint against Delco constituted an employment action that was disadvantageous to plaintiff." The district court determined that an adverse employment action may be found where a plaintiff is deprived of the ability "to expeditiously ascertain and enforce his rights under [a] collective bargaining agreement with his employer." *See McCauley v. Greensboro City Bd. of Educ.,* 714 F.Supp. 146, 152 (M.D.N.C.1987) (court unwilling to hold at summary judgment stage that the suspension of the grievance procedure upon learning of EEOC charge was not an adverse act). The statute itself provides that "[i]t shall be an unlawful employment practice for ... a labor organization to discriminate against any member thereof ..., because he has ... participated in any manner in [a] ... proceeding ... under this subchapter." 42 U.S.C. § 2000e–3(a). In the context of retaliatory claims, the statute forbids unions from taking retaliatory action because a member files a charge with a state agency or with the EEOC. We therefore conclude that the district court did not err in finding that the refusal to proceed with the grievance process because of the DHR complaint is an unlawful employment practice.

The final requirement necessary to establish a prima facie case under Title VII is proof of a causal connection between the protected activity and the adverse employment decision. *See, e.g., Sumner,* 899 F.2d at 209; *Hollander,* 895 F.2d at 85; *Manoharan v. Columbia Univ. College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988). The union argues, and the district court found, that Johnson failed to establish the requisite nexus. In support of this contention, the union maintains that it could not press forward with the grievance on account of Delco's policy and that its acquiescence in Delco's policy is insufficient to establish a retaliatory motive. We disagree with the union's contention and hold that Johnson has made out a prima facie case.

Johnson has established that Palma refused to proceed with his grievance unless he withdrew his DHR charge—the alleged first act of retaliation. In an affidavit submitted to the court, Johnson alleged that the union officials pressured him to withdraw his DHR complaint. The union concedes that it persuaded Johnson to withdraw his DHR complaint. Viewed in the light most favorable to Johnson, we think this evidence is sufficient to establish a prima facie retaliation case. Under well-established principles, a showing that the adverse action directly followed the filing of an administrative charge is sufficient to establish the requisite causal connection. *See DeCintio,* 821 F.2d at 115.

■ Moreover, simply because Johnson filed his original charge against Delco and not against the union does not break the causal connection between the employment action and the protected activity nor preclude a finding of retaliation on the part of the union. In the usual case, an employee will seek the help of his or her representatives in resolving disputes between the employee and the employer. If an administrative agency charge is filed, it typically will be filed against the employer for engaging in a discriminatory practice. A dispute with the union arises only after the employee becomes dissatisfied with the extent of representation by the union in the resolu-

tion of the dispute. Therefore, the filing of a charge against only the employer initially does not negate retaliatory animus on the part of the union. The question becomes whether the union has retaliated against the employee for taking an action that is within his statutory rights. We think a plaintiff establishes retaliation by showing that the union acquiesces in a company policy that abridges the statutory rights of the plaintiff.

■ Nor do we agree with the district court that Delco's policy serves as a legitimate, nondiscriminatory reason for the union's decision not to proceed with the grievance process. Johnson claimed that Palma informed him that the union "had established a good working relationship with representatives of the company and that [the DHR complaint] was 'bad form.'" Title VII, however, does not permit a union to refuse to file grievances "on the ground that the employer looks with disfavor on ... such grievances." *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 669, 107 S.Ct. 2617, 2625, 96 L.Ed.2d 572 (1987).

■ Employees who claim that they have been discriminated against have a right to seek dual remedies through collective bargaining agreements and Title VII or other relevant state and federal statutes. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 48–49, 94 S.Ct. 1011, 1019–20, 39 L.Ed.2d 147 (1974). An employer or union may not force an employee to elect either collective bargaining or a statutory remedy under Title VII. *Id.* at 48–51, 94 S.Ct. at 1019–21 (1974) (an individual may "pursue independently his rights under both Title VII and other applicable state and federal statutes"). Both the right to submit a claim to an arbitrator and the right to submit the same claim under Title VII have "legally independent origins and are equally available to [an] aggrieved employee." *Id.* at 52, 94 S.Ct. at 1022. Passivity on the part of unions in the face of company policies that preclude employees from pursuing both remedies cannot serve as a permissible reason for refusing to proceed with the grievance mechanism. *Cf. Kaplan v. International Alliance of*

*Theatrical & Stage Employees & Motion Picture Mach. Operators,* 525 F.2d 1354, 1360 (9th Cir.1975) (union may be liable under Title VII as a signatory to a collective bargaining agreement that encourages the perpetuation of discriminatory employment practices).

We disagree with the union's contention that the Supreme Court in *Lukens* held that mere passivity is insufficient to establish a bad motive. There, the Supreme Court noted that the lower courts found " 'far more' than mere passivity" in the face of an impermissible policy on the part of the union, 482 U.S. at 666, 107 S.Ct. at 2623, but never held that mere passivity or acquiescence was insufficient to establish retaliation. *See id.* at 665–67, 107 S.Ct. at 2623–24. In any event, we think that the refusal to proceed with the grievance process because of a company policy amounts to more than mere passivity.

■ Regarding Johnson's claim that the union engaged in a second retaliatory act by refusing to take the grievance to arbitration after he filed the second DHR complaint, we think that there are factual issues that need to be resolved. The district court never addressed this claim because it found that the union was not liable for retaliation in connection with its original requirement that the DHR complaint be withdrawn in accordance with Delco's policy. Johnson, in his affidavit, alleged that Palma knew about the filing of the second complaint against Delco because he informed Palma. Palma contends that he decided not to proceed to arbitration prior to learning about the new complaint. Whether Palma knew of the filing of the second administrative complaint prior to deciding not to proceed with arbitration is a material fact in dispute and may not be disposed of by summary judgment.

II. *Dismissal of complaint against International Union*

Johnson's next contention is that the district court erred by dismissing the Title VII claim against the International Union because the International Union knew about the retaliatory acts and because the DHR

and EEOC complaints put the International Union on notice. We find this contention to be without merit.

■ A prerequisite to commencing a Title VII action against a defendant is the filing with the EEOC or authorized state agency of a complaint naming the defendant. 42 U.S.C. § 2000e–5(e). Because these charges generally are filed by parties not versed in the vagaries of Title VII and its jurisdictional and pleading requirements, we have taken a "flexible stance in interpreting Title VII's procedural provisions," *Egelston v. State University College at Geneseo,* 535 F.2d 752, 754, 755 (2d Cir.1976), so as not to frustrate Title VII's remedial goals. Thus, courts have recognized an exception to the general rule that a defendant must be named in the EEOC complaint. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890, 905–06 (7th Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982). This exception, termed the "identity of interest" exception, permits a Title VII action to proceed against an unnamed party where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge. *See, e.g., Romain v. Kurek,* 836 F.2d 241, 245–46 (6th Cir.1987) (per curiam); *Glus v. G.C. Murphy Co.,* 562 F.2d 880, 888 (3d Cir.1977); *Maturo v. National Graphics, Inc.,* 722 F.Supp. 916, 925 (D.Conn.1989); *Garcia v. Gardner's Nurseries, Inc.,* 585 F.Supp. 369, 372 (D.Conn.1984).

In *Glus,* the Third Circuit developed a four part test to determine whether an "identity of interest" exists, thereby excusing a Title VII plaintiff's failure to name a defendant in the EEOC complaint. The four factors are

1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unneces-

sary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Glus,* 562 F.2d at 888. Applying the factors to the facts of this case, we conclude that the dismissal of the complaint against the International Union should not be disturbed.

■ There is no question that Johnson was able to ascertain the role of the International Union and could have named, if he wished to, the International Union in the agency complaints. Johnson, in fact, wrote to the president of the International Union and explained his dispute with Local 509. Second, the interests of the International Union and Local 509 are not so similar that conciliation on the part of the International would be unnecessary. Only the Local initiates and participates in the grievance process under the collective bargaining agreement. An EEOC investigation, prompted by the filing of a charge against the International Union, might have revealed that the International Union played no role in decisions relating to employees' grievances, resulting in a termination of the charges against it. For that reason, a finding against the Local actually would prejudice the International Union because it would be forced to participate in proceedings to resolve a dispute when it played absolutely no role in the cause of that dispute. Finally, there is no indication that Local 509 is the agent of the International Union nor is there any other basis for inferring that the International Union was represented by Local 509 in connection with the grievance process. *See United Mine Workers v. Coronado Coal Co.,* 259 U.S. 344, 395, 42 S.Ct. 570, 577, 66 L.Ed. 975 (1922) (mere fact of affiliation does not establish an agency relationship).

Johnson relies heavily on *Kaplan v. International Alliance of Theatrical & Stage Employees & Motion Picture Ma-* *chine Operators,* 525 F.2d 1354 (9th Cir. 1975). There, the plaintiff's sex discrimination complaint with the EEOC named the discriminating party as "I.A.T.S.E. LOCAL 659—INTERNATIONAL PHOTOGRAPHERS OF THE MOTION PICTURE INDUSTRIES." *Id.* at 1359. The International Union in that case argued that it could not be sued because the plaintiff neglected to name it in the agency complaint. The court rejected this contention because several factual statements in the EEOC complaint could be read to afford notice to the International Union. *Id.* The factual statements in Johnson's DHR complaint do not implicate the International Union in any way.

This case is factually closer to *Stache v. International Union of Bricklayers & Allied Craftsmen,* 852 F.2d 1231 (9th Cir. 1988), *cert. denied,* — U.S. —, 110 S.Ct. 64, 107 L.Ed.2d 32 (1989). In *Stache,* plaintiff's Title VII complaint charged the International Union with failing to help her when it learned of the local's discriminatory actions. The court held that since the EEOC claim charged the local with specific acts of discrimination, plaintiff's charges did not put the International Union on notice. Additional bases for its holding were that the inaction of the International Union was not closely related to those specific acts of discrimination and there was no contractual relationship between the International Union and plaintiff's employer. *Id.* at 1234.

An issue left open by the court in *Stache* was whether a letter sent by plaintiff, which was presumed not to have been received by the International Union in that case, would have constituted a "triggering mechanism by which the International [Union] was compelled to act." *Id.* Johnson argues that both a call from Palma to the International Union and a letter sent by Johnson, dated October 2, 1980, amounted to such a "triggering mechanism." However, even if the International Union knew of the charges against Local 509, it did not have notice of any charges against it.

We find that the agency complaints were insufficient to put the International Union

on notice of the Title VII charges against it and that the subsequent communications failed to cure the defects in the administrative complaints.

## CONCLUSION

On the basis of the foregoing, we vacate so much of the judgment of the district court as dismisses the Title VII action against Local 509 and remand for further proceedings consistent with this opinion. We affirm the judgment insofar as it dismisses the complaint against the International Union.