Susan Q. BRIDGES, Virginia D'Aponte, et al., Plaintiffs,

v.

EASTMAN KODAK COMPANY, Yourdon, Inc., Thomas A. Walker, et al., Defendants.

No. 91 Civ. 7985 (RLC).

United States District Court, S.D. New York.

May 19, 1993.

1022

Solotoff & Solotoff, Great Neck, NY (Lawrence Solotoff, of counsel), for plaintiffs.

Jaspan, Ginsbeg, Schlesinger, Silverman & Hoffman, Garden City, NY (Stanley A. Camhi, of counsel), for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiffs Susan Q. Bridges, Virginia D'Aponte and Kimberly Muryasz allege that

defendants Eastman Kodak Company, Yourdon, Inc., Thomas A. Walker, John Kucik, Michael French, Kevin Cash, Mary Heaphy and David Offenhartz violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the New York Human Rights Law, 18 McKinney's N.Y. Executive Law § 296(1)(a) (1982). The plaintiffs allege that while employed by Yourdon, a Kodak subsidiary, they were sexually harassed by defendants Cash and Offenhartz, and that they were constructively discharged as a result of the defendants' harassment.

Defendant Cash moves, under Rules 12(b)(1) and 12(b)(6), F.R.Civ.P., (1) for dismissal of himself as a defendant in the plaintiffs' Title VII claims, (2) for dismissal of the plaintiffs' *quid pro quo* sexual harassment claim, (3) for dismissal of himself as a defendant in the plaintiffs' New York Human Rights Law claim, and (4) for dismissal of the punitive damages portion of the state law claim.

*Discussion*

### I.

Cash claims he cannot be named as a defendant in the plaintiffs' Title VII lawsuit because the plaintiffs failed to name him as a respondent in their Equal Employment Opportunity Commission (EEOC) charges. Although only Kodak and Yourdon are named as respondents in the plaintiffs' EEOC charges, each charge contains allegations that Cash sexually harassed the plaintiffs and that, as their supervisor, Cash failed to prevent defendant Offenhartz, a Yourdon employee, from sexually harassing the plaintiffs.[1]

■ Title VII provides that a complainant who files a charge with the EEOC may bring a civil action against the respondents named in that charge within ninety days after the EEOC or the analogous state agency issues a notice of the right to sue. 42 U.S.C.

§ 2000e–5(f)(1). As a result of this provision, a district court generally has subject matter jurisdiction only over actions against those individuals named as respondents in an EEOC charge. *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir.1991); *Gilmore v. Local 295*, 798 F.Supp. 1030, 1037 (S.D.N.Y.1992) (Goettel, J.); *Streeter v. Joint Indust. Bd. of Elec. Indus.*, 767 F.Supp. 520, 523 (S.D.N.Y.1991) (Wood, J.).

However, the courts have adopted a flexible approach toward interpreting Title VII's procedural requirements. *See Egelston v. State Univ. College*, 535 F.2d 752, 754–55 (2d Cir.1976). In keeping with this flexibility, the Second Circuit has recognized an "identity of interest" exception to the general rule that a defendant must first be named as a respondent in an EEOC charge. *Johnson*, 931 F.2d at 209. The following four factors must be considered in determining whether to apply the exception:

1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party. *Id.* at 209–210 (citing *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir.1977)).[2]

■ Without addressing the four factors, Cash concludes that the "identity of interest" exception should not be applied to forgive the

---

1. Each plaintiff filed her own charge with the EEOC. With the exception of the date on which each plaintiff alleges she was constructively discharged, their EEOC charges contain identical factual allegations. *See* Exhibit A, Plaintiffs' Atty. Affirmation.

2. Relying on *Drummer v. DCI Contracting Corp.*, 772 F.Supp. 821, 829 (S.D.N.Y.1991) (Sweet, J.), Cash claims that in addition to proving that an

"identity of interest" exists between the unnamed defendant and a defendant named as a respondent in the EEOC charge, a plaintiff must also demonstrate that the unnamed defendant had actual notice of the EEOC charge. However, the Second Circuit in *Johnson* did not make proof of notice a requirement for applying the "identity of interest" exception. *See Johnson*, 931 F.2d at 209–210.

plaintiffs' failure to name him as a respondent in their EEOC charges. Cash claims that his interest is necessarily different from that of Kodak and Yourdon because the charges omit any reference to a *quid pro quo* theory of sexual harassment. As a result of the alleged omission, Cash contends that Kodak and Yourdon were encouraged to pursue a defense strategy incompatible with his defense.[3] Cash's argument is unavailing, for, as discussed below with respect to Cash's motion to dismiss the plaintiffs' *quid pro quo* claim, neither Cash nor defendants Kodak and Yourdon had any basis for concluding from the plaintiffs' EEOC charges that the plaintiffs would not later assert a *quid pro quo* cause of action.

Despite Cash's failure to address the four factors outlined in *Johnson*, consideration of those factors is necessary to decide whether the "identity of interest" exception should be applied to permit the plaintiffs' to name Cash as a defendant. *See* 931 F.2d at 209–210. With respect to the first factor, the plaintiffs cannot claim ignorance of Cash's role in the harassment as an excuse for failing to name him as a respondent in their EEOC charges. Undoubtedly, the plaintiffs knew of his involvement in the harassment at the time they filed their EEOC charges because each charge contains allegations of Cash's harassing conduct.

As for the second factor, the interests of the named defendants, Yourdon and Kodak, were substantially similar to those of Cash for the purpose of obtaining voluntary conciliation and compliance. Cash was an agent of Yourdon and Kodak, and was the supervisor of all three plaintiffs. *See Gilmore*, 798 F.Supp. at 1038 (unnamed defendant, a regional field manager, had substantial identity with corporate defendant, who was named as respondent in EEOC charge, because he was an agent of the corporate defendant).

With respect to the third factor, Cash has not provided any evidence of actual prejudice as a result of his absence from the EEOC proceedings. Cash argues that the complaint is devoid of any allegation that he was notified of the plaintiffs' EEOC charges, or that he participated in the EEOC conciliation process. However, Cash does not explain how he was harmed by either the alleged lack of notice or his alleged lack of participation.

In any event, the plaintiffs submitted evidence which indicates that Cash had notice that the plaintiffs filed EEOC charges naming him as a harasser. In letters Kodak submitted to the EEOC, Kodak noted Cash's repudiation of the plaintiffs' sexual harassment allegations, and Kodak indicated that it supported Cash's position. (Exhibit C, Plaintiffs' Atty. Affirmation).[4] Certainly, Kodak and Yourdon would not have been able to report Cash's response to the charges without first notifying and informing him about the charges. As a result of the letters, even if the EEOC did not involve Cash in the

---

**3.** Under the *quid pro quo* sexual harassment theory corporate defendants are held strictly liable for the sexually harassing conduct of their supervisors whereas under the "hostile environment" sexual harassment theory corporate defendants are not automatically liable for a supervisor's harassing conduct. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 70–71, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *see also Carrero v. New York City Housing Authority*, 890 F.2d 569, 578–579 (2d Cir.1989). Thus, Cash argues that since the plaintiffs' EEOC charges only contain factual allegations in support of "hostile environment" harassment, Kodak and Yourdon, as corporate defendants, did not fear being held strictly liable for Cash's alleged harassment of the plaintiffs. Instead, Kodak and Yourdon could avoid liability by asserting their ignorance of the sexual harassment, a defense strategy unavailable to Cash.

**4.** Cash contends that this court may not base its decision on affidavits and other evidence, such as

the letters written by Kodak, which were not a part of the plaintiffs' complaint. However, deciding whether to dismiss a defendant because of a plaintiff's failure to name him as a respondent in his or her EEOC charge is a jurisdictional issue. *See Gilmore*, 798 F.Supp. at 1037; *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 885 (3d Cir. 1977). Cash is confusing the requirements of Rule 12(b)(6), F.R.Civ.P., dismissal for failure to state a claim, with those of Rule 12(b)(1), F.R.Civ.P., dismissal for lack of subject matter jurisdiction. In deciding a Rule 12(b)(6), F.R.Civ.P., motion, the court must base its decision solely on the complaint and any documents attached to it as exhibits. *Goldman v. Belden*, 754 F.2d 1059, 1065–1066 (2d Cir.1985). This restriction does not apply to deciding a Rule 12(b)(1), F.R.Civ.P., motion. Rather, the plaintiff may establish subject matter jurisdiction through extra-pleading material. *Exchange Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1130 (2d Cir.1976).

conciliation process, the EEOC was at least aware of his response to the plaintiffs' allegations. Moreover, Cash admits in his brief that the EEOC investigation of the plaintiffs' allegations prior to its issuance of a right-to-sue letter was "perfunctory." Thus, to the extent there was an investigation, Cash was not harmed by the EEOC's failure to contact him.

The fourth factor is phrased so as to enable plaintiffs to name an agent's principal as a defendant even though they named only the agent as a respondent in their EEOC charges.[5] *See* 931 F.2d at 210. In this case the opposite occurred. The plaintiffs named the principals, Yourdon and Kodak, as respondents, but did not name the agent, Cash, as a respondent. Nonetheless, an agency relationship existed between Cash and corporate defendants Yourdon and Kodak, and the court's real concern in *Johnson* with respect to the fourth factor seemed to be the closeness of the relationship between the named and unnamed defendants. *See Id.* In particular, the court was troubled that the named and unnamed defendants had a looser relationship than that of agent and principal; the named defendant was the local affiliate of the unnamed defendant.[6] *Id.*

In addition to the four factors comprising the "identity of interest" exception, the Second Circuit in *Johnson* implied that another relevant consideration is whether, although not named as a respondent, the defendant is cited within the body of the EEOC charge as having played a role in the discrimination. *Id.* 931 F.2d at 210 (discussing *Kaplan v. Int'l Alliance of Theatrical & Stage Employees & Motion Picture Machine Operators,* 525 F.2d 1354 (9th Cir.1975)); *Maturo v.*

*Nat'l Graphics, Inc.,* 722 F.Supp. 916, 925 (D.Conn.1989) (permitting suit against defendant not named as respondent in plaintiff's EEOC charge in part because defendant was identified in body of administrative charge as the harasser). The plaintiffs clearly state in their EEOC charges that Cash played a significant role in the sexual harassment.

Based upon the application of this additional consideration as well as the four factor "identity of interest" test, an exception will be made to allow the plaintiffs to name Cash as a defendant in their Title VII claims. Thus, Cash's motion to dismiss for lack of subject matter jurisdiction is denied.[7]

## II.

Cash next contends that the plaintiffs' *quid pro quo* sexual harassment claim must be dismissed pursuant to Rule 12(b)(1), F.R.Civ.P, for lack of subject matter jurisdiction. In Title VII cases, district courts have subject matter jurisdiction only over those claims reasonably related to the factual allegations in the plaintiff's EEOC charge. *Gomes v. Avco Corp.,* 964 F.2d 1330, 1334 (2d Cir.1992).

Cash argues that the plaintiffs' EEOC charges bear no relationship to their *quid pro quo* claim because the charges assert only a "hostile environment" theory of sexual harassment. Indeed, the plaintiffs' specifically allege in their EEOC charges that the conduct of defendants Offenhartz and Cash created a "hostile environment," but do not expressly state that the defendants' behavior constituted *quid pro quo* sexual harassment. (Exhibit A, Plaintiffs' Atty. Affirmation).

5. Apparently, the Second Circuit believes that plaintiffs should not be penalized for failing to name the principal as a respondent because the agent who is named as a respondent might have created the impression to complainants that their relationship with the principal should be through the agent. *See* 931 F.2d at 210.

6. Applying the four factor test articulated in *Johnson* may be awkward depending on the facts of a particular case. In *Gilmore,* rather than applying the four factors, the district court interpreted *Johnson* as creating two exceptions to the general rule that a defendant must be named as a respondent in the EEOC charge. First, a defendant not named in the EEOC charge may be sued

if the defendant has a "substantial identity" with or is in an agency relationship with the named defendant. 798 F.Supp. at 1038. Second, an exception is allowed if the plaintiff's EEOC charge contains facts from which the EEOC could have inferred that the named and unnamed parties were part of a "common discriminatory scheme." *Id.* As revealed above by applying the four factors, both exceptions articulated in *Gilmore* apply to plaintiffs' failure to name Cash as a respondent.

7. Although Cash considered his motion to be pursuant to Rule 12(b)(6), F.R.Civ.P., it is in fact a Rule 12(b)(1), F.R.Civ.P., motion. *See supra* note 4.

However, plaintiffs are not required to articulate in their EEOC charges the precise legal theories which they will later assert in a Title VII lawsuit. Rather, a complainant filing an EEOC charge is only required "to describe generally the action or practices complained of." EEOC Procedural Regulations, 29 CFR § 1601.12(b) (1992). In *Gomes*, the Second Circuit concluded that it was unaware of any case in which a plaintiff's failure, in an EEOC charge, "to properly identify a theory of discrimination barred a subsequent suit in federal court relating to the precise incident challenged in the EEOC complaint." 964 F.2d at 1335.[8]

Thus, the factual allegations in an EEOC charge, rather than any legal theories stated therein, should be the focus for determining whether a cause of action is reasonably related to the plaintiff's EEOC charge. In making this decision, the court must look "not merely to the four corners of the often inarticulately framed charge, but take into account the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Id.* (quoting *Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir.1979)).

Cash also argues that the factual allegations in the plaintiffs' EEOC charges bear no relation to the plaintiffs' *quid pro quo* claim.

Cash asserts that the charges only describe conduct amounting to "hostile environment" harassment, and that an EEOC investigation would not have extended to an inquiry into the possibility of *quid pro quo* harassment because the two theories are based on very different forms of sexual misconduct. According to Cash, sexual misconduct in the form of verbal abuse and gesturing may amount to "hostile environment" harassment, but *quid pro quo* harassment requires allegations that the plaintiffs were expected to participate in "sexual acts" such as intercourse or the provision of "sexual favors."

In actuality, the two sexual harassment theories are not distinguishable on the basis of the sexual conduct alleged.[9] In recognizing *quid pro quo* harassment and "hostile environment" harassment as two distinct forms of sexual discrimination under Title VII, the Supreme Court endorsed the EEOC Guidelines' definition of sexual harassment which regards unwelcome "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature" as actionable under either theory of harassment. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. at 57, 65, 106 S.Ct. at 2399, 2404 (1986) (quoting 29 CFR § 1604.11(a) (1992)); *see, e.g., Chamberlin v. 101 Realty, Inc.*, 915 F.2d 777, 784 (1st Cir.1990) (sexual

---

**8.** Cash relies on *Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726 (9th Cir.1984), *cert. den.*, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985), for his argument that all legal theories asserted in a plaintiff's Title VII action must first be alleged in the plaintiff's EEOC charge. *Brown* is inapposite. The Second Circuit has explained that *"Brown* turned not on plaintiff's failure to describe both theories of relief in her EEOC [charge], but rather on the factual differences in the two complained of acts of discrimination." *Gomes*, 964 F.2d at 1335. Unlike *Brown*, both the plaintiffs' hostile environment and *quid pro quo* claims stem from the same set of facts alleged in the plaintiffs' EEOC charges, a pattern of alleged unwelcome sexual conduct which took place from 1989 to 1990.

**9.** Instead, the two sexual harassment theories are distinguished by whether the misconduct is "directly linked to the grant or denial of an economic *quid pro quo*" or whether the misconduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Vinson*, 477 U.S. at 65,

106 S.Ct. at 2399; *see also Watts v. New York City Police Dept.*, 724 F.Supp. 99, 103 (S.D.N.Y. 1989) (Sweet, J.) This distinction is derived from the EEOC Guidelines' sexual harassment definition which specifies three instances when the workplace misconduct identified within the definition amounts to sexual harassment, the first two of which constitute *quid pro quo* harassment. *See Vinson*, 477 U.S. at 65; *Chamberlin*, 915 F.2d 777, 782 (1st Cir.1990). The EEOC Guidelines definition of sexual harassment is as follows:

Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment. 29 CFR § 1604.11(a) (1992).

remarks and gestures are considered conduct amounting to *quid pro quo* harassment).[10]

The conduct exhibited by Cash, as described in the plaintiffs' EEOC charges, is the type of conduct regarded by the EEOC Guidelines' definition as actionable. The plaintiffs' EEOC charges allege that Cash was "almost daily abusive, used foul and offensive language, treated me and other women in a violent manner, referred to me and other women as bitches;" and that Cash "refused to restrain, or prohibit David Offenhartz from conducting himself in such a degrading and offensive manner." (¶4 of Addendum to plaintiffs' EEOC charges ("Addendum"), Exhibit A, Plaintiffs' Atty. Affirmation). Thus, Cash's basis for regarding the plaintiffs' *quid pro quo* claim as unrelated to the factual allegations in their EEOC charges is misguided.

Moreover, although not required to do so, the plaintiffs' EEOC charges come very close to expressly alleging a *quid pro quo* theory of harassment. "Hostile environment" and *quid pro quo* harassment are theoretically distinct claims, but the discrimination which gives rise to each claim "is not neatly compartmentalized." *Carrero,* 890 F.2d at 579. As a pertinent example, discharge from a "hostile environment" may constitute *quid pro quo* harassment. · *See Chamberlin,* 915 F.2d at 782; *see also* "Policy Guidance on Current Issues of Sexual Harassment," *EEOC Compliance Manual,* No. 137, at 4033 (BNA April, 1990) (if constructive discharge due to "hostile environment" is proven, claim will also become one of *quid pro quo* harassment because tangible job condition was affected).

The plaintiffs' EEOC charges contain all the factual allegations necessary for a *quid pro quo* claim based on just such an occurrence of discharge from a "hostile environment." Specifically, the plaintiffs allege in their EEOC charges that Cash and Offenhartz "continued a pattern and practice relating to myself and other women creating a 'hostile environment' constituting ·sexual harassment and intimidation. . . ." The charges further allege that as a· result of these actions, as well as the defendants' "failure to discontinue the acts complained of," the plaintiffs "were compelled to resign" and were "constructively discharged."[11] (¶6 of Addendum, Exhibit A, Plaintiffs' Atty. Affirmation). Thus, the court need not look any further than the ·four corners of the plaintiffs' EEOC charges to see that the plaintiffs' *quid pro quo* claim is reasonably related to their EEOC charges.

· Cash also moves to dismiss plaintiffs' *quid pro quo* claim pursuant to Rule 12(b)(6), F.R.Civ.P., for failure to state a claim. According to Cash, like the plaintiffs' EEOC charges, their complaint fails to allege that the plaintiffs were sexually propositioned, a requirement Cash regards as a necessary element for assertion of a *quid pro quo* claim. However, as discussed above, Cash's conception of the sexual misconduct required for *quid pro quo* harassment is too constrained.

To state a claim for *quid pro quo* sexual harassment an employee must allege the following:

(1) the employee is a member of a protected group; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the employee's reaction to harass-

---

10. The Second Circuit has described *quid pro quo* harassment as occurring when "an employer alters an employee's job conditions or withholds economic benefits because the employee refuses to submit to sexual demands." *Carrero v. New York City Housing Authority,* 890 F.2d 569, 577 (2d Cir.1989). Since the Second Circuit cites *Vinson* as the source for its description, the phrase "sexual demands" appears to be shorthand for the forms of sexual misconduct listed by the Supreme Court in *Vinson* as actionable pursuant to either a *quid pro quo* theory or a "hostile environment" theory.

11. "When a constructive discharge is found, an employee's resignation is treated—for the pur-

pose of establishing a prima facie case of employment discrimination—as if the employer had actually discharged the employee." *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1188 (2d Cir.1987). In order to find that an employee was constructively discharged in violation of Title VII, the court must be satisfied that the working conditions "would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign," and the employer must have " 'deliberately [made] an employee's working conditions so intolerable' as to force the resignation." *Martin v. Citibank, N.A.,* 762 F.2d 212, 221 (2d Cir.1985) (quoting *Pena v. Brattleboro Retreat,* 702 F.2d 322, 325 (2d Cir.1983)).

ment complained of affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment; and (5) respondeat superior. *Henson v. Dundee*, 682 F.2d 897, 909 (11th Cir.1982); *Ottaviani v. State University of New York*, 679 F.Supp. 288, 335 (S.D.N.Y. 1988) (Kram, J.) (adopting *Henson* test), *aff'd*, 875 F.2d 365 (2d Cir.1989), *cert. den.*, 493 U.S. 1021, 110 S.Ct. 721, 107 L.Ed.2d 740 (1990); *McLaughlin v. State of New York Governor's Office of Employee Relations*, 739 F.Supp. 97, 105 (N.D.N.Y.1990) (adopting *Henson* test).

▪ The first requirement is easily met since women are a protected group under Title VII, and the plaintiffs allege in their complaint that they are "female". (Verified Complaint ("Complaint"), ¶¶ 1–3). As for the second requirement, the plaintiffs allege that Cash's "unwelcome" conduct included "foul language" and "sexual innuendo." (Complaint, ¶ 30 as incorporated in ¶ 47). In addition to these general statements, the complaint also provides specific examples of his alleged harassment. (¶ 30(a)–(r) as incorporated in ¶ 47). The third requirement is satisfied if the plaintiff demonstrates that but for the fact of her or his sex, the plaintiff would not have been the object of harassment. *Chamberlin*, 915 F.2d at 784. Accordingly, the plaintiffs provide examples in their complaint which make clear that Cash's alleged conduct was directed only at females. (¶ 30 as incorporated in ¶ 47).

In satisfaction of the fourth requirement, the plaintiffs allege that Cash's behavior included "unfair and unequal employment treatment of Plaintiffs with respect to their terms and conditions of employment." (Complaint, ¶ 30 as incorporated in ¶ 47). The plaintiffs also allege that they were constructively discharged; that Cash "threatened the Plaintiffs and other women with termination, discipline, or economic loss if they were to complain to upper management;" and that Cash advised the plaintiffs that they would be "out of here" if they complained to upper management (¶ 30(j), (r), ¶ 37 as incorporated in ¶ 47). *See, e.g., Showalter v. Allison Reed Group, Inc.*, 767 F.Supp. 1205, 1212 (D.R.I.1991) (harassment affects a tangible aspect of employment if plaintiffs who "wanted to keep their jobs, . . . needed to comply with the condition of sexual harassment.").

▪ The fifth requirement of respondeat superior apparently assumes that an employer, rather than a supervisor, is the party being sued. *See Henson*, 682 F.2d at 910. However, the requirement is equally applicable to *quid pro quo* claims asserted against a supervisor who is sued in either his official or individual capacity. *Cf. Bridges v. Eastman Kodak Co.*, 800 F.Supp. 1172 (S.D.N.Y.1992) (Carter, J.) (agents may be sued in both their official and individual capacities). The requirement is meant to call attention to a critical distinction between *quid pro quo* and "hostile environment" claims: Unlike in "hostile environment" cases, in *quid pro quo* cases the harassing employee acts as and for the company, holding out the employer's benefits as an inducement to the employee to submit to the sexually harassing conduct. *See, e.g., Carrero*, 890 F.2d at 579; *Henson*, 682 F.2d at 910. Thus, as a requirement for asserting a *quid pro quo* claim, a plaintiff must assert that the supervisor named as a defendant was given authority by the employer to alter the terms, conditions and privileges of the plaintiffs' employment. Plaintiffs allege that Cash was their supervisor, and that as an agent of corporate defendants Yourdon and Kodak, Cash had the authority to fire plaintiffs for refusing to submit to or put up with his and defendant Offenhartz's unwelcome conduct. (Complaint, ¶¶ 22, 26, 30(j), (r) as incorporated in ¶ 47, ¶ 49).

▪ For the foregoing reasons, Cash's motion to dismiss the plaintiffs' *quid pro quo* claim pursuant to Rule 12(b)(1), F.R.Civ.P., for lack of subject matter jurisdiction and pursuant to Rule 12(b)(6), F.R.Civ.P., for failure to state a claim is denied.

### III.

▪ Cash contends that the plaintiffs cannot bring suit against him for violating the New York Human Rights Law because he is not an "employer" within the meaning of the statute.[12] The New York Human

---

12. Cash's other argument for dismissal of the state law claim is now moot. Cash urged that if

this court granted his motion to dismiss the

Rights Law provides, in pertinent part, that it shall be an unlawful discriminatory practice to do the following:

> (a) For an *employer* ... because of the ... sex ... of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment. Art. 15, New York Human Rights Law; 18 McKinney's New York Executive Law, § 296(1)(a) (1982 & Supp.1993) (emphasis added).

Under this statute, in order for a corporate employee to be individually subject to suit as an "employer," the employee must have either an "ownership interest" in the corporation or "power to do more than carry out personnel decisions made by others." *Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 483 N.Y.S.2d 659, 660, 473 N.E.2d 11, 12 (Ct.App. 1984). A corporate employee is not subject to suit simply because he has a title as an officer and is the manager or supervisor of a corporate division. *Id.*

 Cash asserts that the plaintiffs' complaint does not contain any allegations that Cash was empowered to make personnel decisions. However, the plaintiffs identify Cash as regional sales manager of the New York office, and as their direct supervisor as well as the supervisor of the other account representatives in the same office. (Complaint, ¶¶ 14, 22, 26). In addition, they allege that Cash "[t]hreatened the plaintiffs and other women with termination, discipline, or economic loss if they were to complain to upper management," an allegation which is sufficient at this stage of the litigation to demonstrate that Cash had power to make personnel decisions regarding the plaintiffs' employment at Yourdon. (Complaint, ¶ 30(j)). Thus, Cash's motion to dismiss the plaintiffs' New York Human Rights Law claim against him is denied.

### IV.

 Cash argues that as a matter of law the plaintiffs' cannot recover punitive damages for his alleged violation of the New York Human Rights Law. Indeed, the New York Court of Appeals decision in *Thoreson v. Penthouse Int'l, Ltd.,* 80 N.Y.2d 490, 591 N.Y.S.2d 978, 606 N.E.2d 1369 (1992), *reconsideration den.,* 81 N.Y.2d 835, 595 N.Y.S.2d 397, 611 N.E.2d 298 (1993), which was decided after the plaintiffs commenced this action, unequivocally holds that punitive damages are not available for discrimination claims brought pursuant to the New York Human Rights Law.

The plaintiffs recognize the import of *Thoreson,* but nevertheless request that their punitive damages claim be retained to the date of trial. According to the plaintiffs, a task force appointed by the governor of New York recommended that the Human Rights Law be amended to include punitive damages in sexual harassment cases, and the New York legislature may implement the task force recommendation prior to final disposition of this case.

The plaintiffs' request cannot be honored, for the present state of the law is crystal clear—punitive damages cannot be awarded under the New York State Human Rights Law. To allow the plaintiffs to retain their punitive damages claim based on the speculative hope that the law will be amended prior to trial and apply retroactively unduly burdens the defendants and this court. Therefore, the defendant's motion to dismiss the punitive damages portion of the plaintiffs' New York Human Rights Law claim is granted.

### Conclusion

For the foregoing reasons, Cash's motions to dismiss are all denied with the exception of his motion to dismiss the punitive damages portion of the plaintiffs' New York Human Rights Law claim. The latter motion is granted.

IT IS SO ORDERED.

---

plaintiffs' Title VII claims against him, the court should then decline supplemental jurisdiction of the state law claim against him.