**Susan Q. BRIDGES, Virginia D'Aponte, and Kimberly Muryasz, Plaintiffs,**

v.

**EASTMAN KODAK COMPANY, Yourdon, Inc., Thomas A. Walker, John Kucik, Michael French, Kevin Cash, Mary Heaphy, and David Offenhartz as Supervisors, Agents, and Employees of Eastman Kodak Company and Yourdon, Inc. (A Kodak Company), Defendants.**

No. 91 Civ. 7985 (RLC).

United States District Court, S.D. New York.

Jan. 19, 1995.

Solotoff & Solotoff, Great Neck, NY, Lawrence Solotoff, of counsel, for plaintiffs.

Nixon, Hargrave, Devans & Doyle, Garden City, NY, Thomas G. Dignan, of counsel, for defendants Eastman Kodak Co., Yourdon, Inc., Thomas J. Walker, John Kucik and Michael French.

Jaspan, Ginsberg, Schlesinger, Silverman & Hoffman, Garden City, NY, Stanley A. Camhi, of counsel, for defendant Kevin Cash.

I.

ROBERT L. CARTER, District Judge

Defendants Eastman Kodak Company ("Kodak"), Yourdon, Inc. ("Yourdon"), Thomas A. Walker, John Kucik and Michael French have moved for an order precluding the *quid pro quo* discrimination claims of plaintiffs Susan Q. Bridges, Virginia D'Aponte and Kimberly Muryasz. The motion is denied.

Plaintiffs brought a claim against Defendants Kodak, Yourdon, Walker, Kucik, French, Kevin Cash, Mary Heaphy and David Offenhartz under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the New York Human Rights Law, 18 McKinney's N.Y. Executive Law, § 296(1)(a) (1982), alleging *quid pro quo* sexual harassment. *Bridges v. Eastman Kodak Co.*, 822 F.Supp. 1020 (S.D.N.Y.1993) (Carter, J.). In particular, the complaint alleged that plaintiffs' supervisor, Cash, subjected plaintiffs to unwelcome "foul language, sexual innuendo, [and] unfair and unequal employment treatment of plaintiffs with respect to their terms and conditions of employment." (Verified Complaint ("Complaint"), ¶ 30). Plaintiffs also claimed that Cash, among other things, referred to them and other women as "bitches," made remarks about what he wanted to do sexually to women at work, "attacked women verbally, raised his fists, screamed in their faces," and criticized plaintiffs' work and behavior in terms of their sexuality. *Id.* In addition, the complaint claims that Cash "[t]hreatened the [p]laintiffs and other women with termination, discipline, or economic loss if they were to complain to upper management," "threatened to have them disciplined or fired," "forc[ed] the Plaintiff Muryasz to submit to unwarranted abuse as a condition of training and contin-

ued employment," and "advise[d] ... [plaintiffs] that they would be 'out of here' if they complained." *Id.*

Based on these allegations, the court held in a decision with which familiarity is assumed that plaintiffs could maintain an action for *quid pro quo* sexual harassment, basing its decision on five factors which are required to state a *quid pro quo* discrimination claim under Title VII and the Human Rights Law:

> (1) the employee is a member of a protected group; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the employee's reaction to harassment complained of affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment; and (5) respondeat superior. *Henson v. Dundee,* 682 F.2d 897, 909 (11th Cir.1982); *Ottaviani v. State University of New York,* 679 F.Supp. 288, 335 (S.D.N.Y. 1988) (Kram, J.) (adopting *Henson* test), *aff'd,* 875 F.2d 365 (2d Cir.1989), *cert. den.,* 493 U.S. 1021 [110 S.Ct. 721, 107 L.Ed.2d 740] (1990); *McLaughlin v. State of New York Governor's Office of Employee Relations,* 739 F.Supp. 97, 105 (N.D.N.Y.1990) (adopting *Henson* test).

*Bridges,* 822 F.Supp. at 1027–28.

■ Defendants have asked the court to revisit the issue of the sufficiency of plaintiffs' *quid pro quo* claim in light of the Second Circuit's recent interpretation of that issue in *Karibian v. Columbia University,* 14 F.3d 773 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994). There it stated that

> [t]he relevant inquiry in a *quid pro quo* case is whether the supervisor has linked tangible job benefits to the acceptance or rejection of sexual advances. It is enough to show that the supervisor used the employee's acceptance or rejection of his advances as the basis for a decision affecting the compensation, terms, conditions or privileges or the employee's job.

*Id.* at 778. Defendants wrongfully hone in on the term "sexual advances," concluding that the court intended to limit a *quid pro quo* harassment claim to only those cases where an employer makes explicit sexual overtures towards a plaintiff. This narrow interpretation is unwarranted for a number of reasons.

First, while the supervisor in *Karibian* made overtures to the plaintiff for a sexual relationship, *id.* at 776, the Second Circuit does not narrow its interpretation of *quid pro quo* discrimination to this type of sexual harassment. The court's decision focuses not on the supervisor's behavior, but on whether toleration of that behavior was linked to some threatened or actual economic loss. The issue in *Karibian* was whether the plaintiff's employment terms and conditions were based upon her "submission to his sexual advances." *Id.* at 778.

Second, the Circuit court relies on the Guidelines promulgated by the Equal Employment Opportunity Commission ("EEOC") in formulating its *quid pro quo* sexual harassment definition. The EEOC defines sexual harassment as:

> [u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature ... [when the following conditions are present]: (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

29 C.F.R. § 1604.11(a)(2) (1993).

*Karibian* borrows the EEOC definition, concluding that *"quid pro quo* harassment occurs when 'submission to or rejection of [unwelcome sexual] conduct by an individual is used as the basis for employment decisions affecting such individual.'" *Karibian,* 14 F.3d at 777 (quoting 29 C.F.R. § 1604.11(a)(2) (1993)). The term "conduct" refers back to the EEOC's broad definition of sexual harassment, which includes behavior other than sexual advances or requests.

Third, throughout *Karibian,* the court refers to the offensive behavior as "sexual con-

duct," *id.* at 777, "sexual demands," *id.* at 778, "sexual overtures," *id.* at 779, "sexual harassment," *id.*, and "prohibited conduct," *id.* These terms are used interchangeably to describe the supervisor's behavior in the *quid pro quo* claim, suggesting that any behavior which can be described by any one of these characterizations would constitute *quid pro quo* sexual harassment. Thus, the Circuit's use of the term "sexual advances," *id.* at 778, is not the hinge upon which every *quid pro quo* sexual harassment case should turn. *See also Bridges,* 822 F.Supp. at 1027 n. 10 ("sexual demands" in *Carrero v. New York City Housing Authority,* 890 F.2d 569, 577 (2d Cir.1989) "appears to be shorthand for the forms of sexual misconduct listed by the Supreme Court in [*Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) ] as actionable pursuant to either a *quid pro quo* theory or a 'hostile environment' theory").

Similarly, defendants erroneously rely on other *quid pro quo* cases involving sexual advances to assert that only this type of sexual conduct can constitute a *quid pro quo* claim. *See Carrero,* 890 F.2d at 579 (employer touched, kissed and propositioned employee); *Showalter v. Allison Reed Group, Inc.,* 767 F.Supp. 1205, 1212 (D.R.I.1991), *aff'd,* 984 F.2d 4 (1st Cir.1993) (plaintiff was required to perform sexual acts with co-employee in order to keep medical benefits); *Chamberlin v. 101 Realty, Inc.,* 915 F.2d 777, 780 (1st Cir.1990) ("sexually-motivated conduct" included employer taking plaintiff's hand and making comments about her body).

However, like *Karibian,* these cases do not explicitly limit what conduct on the part of the employer is required for a *quid quo pro* case, but rather reiterate that the crucial point of a *quid pro quo* case is the exchange of job benefits for the toleration of the sexual harassment. *Carrero,* 890 F.2d at 579 ("gravamen of a *quid pro quo* claim is that a tangible job benefit or privilege is conditioned on an employee's submission to sexual blackmail"); *Showalter,* 767 F.Supp. at 1212 ("plaintiffs have shown that the harassment affected a tangible aspect of the conditions of their employment.... In short, the harassment imposed a new condition on the plaintiff's employment: if they wanted to keep their jobs, they needed to comply with the condition of sexual harassment"); *Chamberlin,* 915 F.2d at 783 ("[i]t is the essence of *quid pro quo* harassment that the employee 'was subject[ed] to unwelcome sexual advances by a supervisor ... and ... her reaction to these advances affected tangible aspects of ... her compensation, terms, conditions, or privileges of employment....'") (quoting *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 898 (1st Cir.1988)). *Quid pro quo* cases are often defined in relation to hostile work environment claims—they are distinguishable because the former make job benefits contingent upon submission to the sexual harassment. *Carrero,* 890 F.2d at 579.

Furthermore, some courts have made it clear that behavior other than sexual propositioning can constitute *quid pro quo* discrimination. *See, e.g., Chamberlin,* 915 F.2d at 782 ("there is no reason that a discharge from employment occurring in ... [a hostile] environment could not constitute *quid pro quo* harassment as well"); *Bridges,* 822 F.Supp. at 1027 (same); *Lipsett,* 864 F.2d at 898 (unwelcome sexual "advances" which are basis for *quid pro quo* claim can be "physical gestures" or "verbal expressions").

As this court already held, and Second Circuit authority is not to the contrary, it is not necessary for the complaint to allege that the plaintiffs were sexually propositioned in order to make a *quid pro quo* claim of sexual harassment. *Bridges,* 822 F.Supp. at 1027.

## II.

◼ Defendants also move in limine for an order precluding the defendants Thomas J. Walker, John Kucik and Michael French from being held individually liable. It would appear that Kucik may be classified as an "employer" as that term is defined under Title VII of the Civil Rights Act of 1964. As President of Yourdon, Inc., it would seem that Kucik had sufficient control over plaintiffs' employment conditions to be considered an "employer" under Title VII, and can be held individually liable as a result. By the same token, it would appear that defendants Walker and French, however, are neither

"employers" nor "agents" of the corporate defendants, and as such, they are not individually liable under Title VII.

Under the Human Rights Law (N.Y. State Executive Law, art. 15, Section 296), an "employer" is individually liable for unlawful discriminatory conduct. The New York Court of Appeals has concluded that an officer, manager or supervisor of a corporate division is "not individually subject to suit under New York's Human Rights Law [N.Y. State Executive Law, art. 15, Section 296] ... if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 543, 483 N.Y.S.2d 659, 660, 473 N.E.2d 11 (1984). Thus, it would appear that Kucik meets that yardstick and, therefore, can be held individually liable under the Human Rights Law. On the other hand, it would appear that defendants Walker and French do not possess the requisite ownership interest or power to be considered "employers" and as such, are not individually liable under the Human Rights Law.

█ However, the court does not have all the facts as to these defendants' holdings or the extent of their power as corporate officers. Therefore, the determinations set forth are not fixed or final. There is insufficient information as to the duties, responsibilities, ownership interests, etc. of each defendant for the court to determine their individual liability as a matter of law under either Title VII or New York's Human Rights Law. Final determination of this question must be based on evidence submitted at trial.

### III.

On January 12, 1995, at court conference, defendants' motion for an Order precluding plaintiffs' purported expert, Michele Paludi, from testifying was and is denied.

**IT IS SO ORDERED.**