◼ In the Matter of CAROLE BARTLE, Also Known as CAROLE LEMMON, Petitioner, v EDWARD MERCADO, as Commissioner of the State Division of Human Rights, et al., Respondents. (Proceeding No. 1.) In the Matter of CENTURY BUICK-PONTIAC, INC., et al., Petitioners, v EDWARD MERCADO, as Commissioner of the State Division of Human Rights, et al., Respondents. (Proceeding No. 2.) [652 NYS2d 139] —Peters, J. Proceedings pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Ulster County) to review a determination of respondent Commissioner of Human Rights

which found petitioners in proceeding No. 2 guilty of an unlawful discriminatory practice based on gender and awarded petitioner in proceeding No. 1 $150,000 in compensatory damages.

In May 1988, petitioner Carole Bartle was introduced to petitioner Frank Grimaldi, Jr., president and owner of petitioner Century Buick-Pontiac, Inc., an automobile dealership in Ulster County. After three meetings, Grimaldi offered her a management position in his newly created finance and insurance department. Her job responsibilities included the sale of life, accident and health insurance, as well as warranties and chemicals to each new car buyer arranging for financing. Upon such offer, Bartle quit her job and began working for Century Buick. After approximately nine work days, she was fired. Thereafter, Bartle filed a complaint with respondent State Division of Human Rights charging Grimaldi and Century Buick with an unlawful discriminatory practice (see, Executive Law art 15).

After a hearing, an Administrative Law Judge (hereinafter ALJ) found that Grimaldi made inappropriate comments to Bartle, engaged in inappropriate physical contact by touching and kissing her, that such conduct was unwelcome and interfered with her ability to do her job and that she was fired because of her rejection of his advances. Finding Bartle's quid pro quo claim established, the ALJ awarded compensatory damages in the amount of $150,000, yet refused to make any award of back pay due to her short tenure and commission-based salary. Such decision and order was adopted, in its entirety, by respondent Commissioner of Human Rights.

Grimaldi and Century Buick commenced proceeding No. 2 seeking a review of the Commissioner's determination. Bartle commenced proceeding No. 1 to review that part of the determination which failed to award her back pay. Supreme Court joined both proceedings* and transferred them to this Court pursuant to CPLR 7804 (g).

It is well settled that a determination rendered by the Division, after a hearing and later adopted by the Commissioner, must be upheld if supported by substantial evidence (see, Executive Law § 298; *Matter of Consolidated Edison Co. v New York State Div. of Human Rights*, 77 NY2d 411, 417). Upon our review, we find substantial evidence supporting the determination that Bartle was an employee of Century Buick and

---

* Although the order states that the proceedings were consolidated, it appears that they were joined.

therefore was covered by Executive Law § 296. Despite the commission-based nature of her pay, the record reflects that Century Buick, through Grimaldi, hired her, controlled her hours, established the days that she worked and provided her with an office, supplies and support staff. Moreover, as she worked exclusively for Century Buick, it had the right to dismiss her and make the sole determination as to which products she was to sell and at what price. The degree of control and direction reserved to this employer sufficiently established the existence of an employer/employee relationship (see, Matter of Field Delivery Serv. [Roberts], 66 NY2d 516, 521; Matter of Villa Maria Inst. v Ross, 54 NY2d 691).

We find fault, however, with the determination that Bartle was subjected to quid pro quo sexual harassment. The burden is initially placed upon a complainant to establish a prima facie case by showing that she was subjected to unwelcome sexual conduct, and that her reaction to that conduct was then used as the basis for decisions affecting the compensation, terms, conditions or privileges of her employment (see, Karibian v Columbia Univ., 14 F3d 773, 777-778, cert denied 512 US 1213; see also, Chamberlin v 101 Realty, 915 F2d 777, 782; Carrero v New York City Hous. Auth., 890 F2d 569, 577). In an attempt to sustain that burden, Bartle solely offered her own testimony. She alleged that in the nine days that she worked, Grimaldi harassed her by hugging her and kissing her on the cheek three or four times each day. Such physical contact, according to Bartle, occurred in the showroom, in her office and in his office. She testified that Grimaldi would comment on her appearance and had once made a sexually inappropriate remark that he "hadn't had sex for eight months" while in her presence and that of two other salespeople, one male and one female. Finally, she testified that each time that Grimaldi made advances toward her, she pulled away. Based upon the volume of her sales, she contended that there was no reason to fire her other than for discriminatory purposes.

Our review of the testimony reveals that petitioner failed to sustain her burden. With an essential element being the establishment that the "harassment was sexually motivated" (Chamberlin v 101 Realty, supra, at 783; see, Bridges v Eastman Kodak Co., 822 F Supp 1020, 1027), it is notable that not even Bartle believed that Grimaldi's actions were "sexual" in nature. Recognizing discrepancies as to the frequency of these occurrences, Bartle consistently testified that he never made any sexual advances toward her, that the frequency or intensity of the alleged contacts never changed, that these

interactions predominantly occurred in open view and that, notwithstanding several after-hours meetings alone with Grimaldi, he never used these opportunities to engage in any inappropriate conduct.

With respect to the "unwelcomeness" of the alleged sexual advances—"[t]he gravamen of any sexual harassment claim" (*Meritor Sav. Bank v Vinson*, 477 US 57, 68; *see, Karibian v Columbia Univ., supra*, at 779)—Bartle's own testimony evinces that she never communicated, by words or behavior, that these contacts were uninvited, offensive or unwarranted. In fact, she stated that in response to his peck on the cheek or hug around the shoulder, she would say things such as "thank you" and "good morning". Her conflicting testimony to the effect that she pulled away from him yet did not want him to know that she disapproved of these gestures is not sufficient, by itself, to validate her claim. The facts here are markedly different from those in both *Carrero v New York City Hous. Auth.* (890 F2d 569, *supra*) and *Chamberlin v 101 Realty* (915 F2d 777, *supra*). Furthermore, as to the alleged sexual remark made by Grimaldi that "he hadn't had sex for eight months", Bartle admitted that she never protested, walked away or even changed the subject. Rather, she joined in the exchange by stating that "it's not my problem".

As Bartle failed to openly communicate the "unwelcomeness" of these contacts to Grimaldi, she also failed to demonstrate that her reaction to such conduct was then used as the basis for decisions affecting her employment (*see, Karibian v Columbia Univ., supra*, at 778; *Chamberlin v 101 Realty, supra*, at 783; *Bridges v Eastman Kodak Co., supra*, at 1027).

Accordingly, finding a lack of substantial evidence to support the Commissioner's determination, we hereby annul the determination.

Mikoll, J. P., White and Yesawich Jr., JJ., concur. Adjudged that the determination is annulled, without costs, and complaint dismissed.