**UNITED STATES of America, Plaintiff,**

v.

**NEW YORK CITY TRANSIT AUTHORITY, Defendant.**

**No. 93 CV 3354.**

United States District Court, E.D. New York.

April 21, 1995.

U.S. Dept. of Justice, Civil Rights Div. (William B. Fenton and Maureen T. Dulen, of counsel), Washington, DC, for plaintiff.

Albert C. Cosenza, Vice President and Gen. Counsel, New York City Transit Authority (Richard Schoolman, of counsel), Brooklyn, NY, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

The United States (the government) brings this action against the New York City Transit Authority (the Authority) alleging that the Authority has engaged in a pattern or practice of discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (Title VII).

The government seeks an order enjoining the Authority from maintaining or reinstating a policy that discriminates against employees who file charges of employment discrimination with federal, state, or city fair employment practices agencies.

The government moves for summary judgment, and the Authority cross-moves for an order dismissing the complaint on the ground that the case is moot or, alternatively, granting summary judgment.

I

The following facts are undisputed.

The Authority provides a procedure for the investigation and informal settlement of em-

ployment discrimination complaints through its Equal Employment Opportunity Division (the Division). According to Frank Leslie, the Authority's Vice President for Equal Employment Opportunity, this procedure exists "for resolving these issues at the lowest possible level" "before they become major complaints." *See* Pl.'s Rule 3(g) Statement, Leslie Depo. at 16.

Under the Authority's challenged policy, if an employee who had filed a complaint with the Authority thereafter filed an employment discrimination charge with a federal, state or city fair employment practices agency, the Authority would transfer the complaint from the Division to its Law Department. Moreover, the Division would refuse to accept a discrimination complaint filed by an employee who had already filed a charge of discrimination with such an agency.

The Law Department also handles for the Authority matters pertaining to discrimination charges filed with outside fair employment agencies.

In October 1991, while investigating an employment discrimination claim, the United States Equal Employment Opportunity Commission (the Commission) found reasonable cause to believe that the Authority's practice under its policy was unlawful under Title VII. The Commission concluded that "an employer cannot deny to an employee a forum for redress that would have been available to him had he not filed a charge of employment discrimination." *See* Pl.'s Rule 3(g) Statement, Royster Decl., Exh. A ("Determination on Review of Title VII Charge").

In May 1992, after the Authority declined an offer to conciliate, *see* Royster Decl., Exh. B, the Commission transferred the matter to the Department of Justice. *See* Royster Decl., Exh. C.

On April 2, 1993, after some investigation, the Department of Justice notified the Authority that it deemed the Authority's procedure a practice of employment discrimination and explained that it was authorized to bring suit.

After the Authority said it was willing to modify the policy, the Department of Justice said it wished to have a consent decree re-

quiring the Authority to comply with Title VII and not to revert back to the previous practice.

The Authority refused to agree to a consent decree but on June 21, 1993 changed its policy by requiring that complaints filed with the Division be investigated by that office even if the employee also filed a charge with an outside agency.

II

Thereafter, on July 22, 1993 the government brought this suit for an injunction against continuance of the old policy. The Authority moved to dismiss, asserting that because the policy had been "changed precisely" in the manner requested before the action began the case was moot.

In a Memorandum and Order dated March 17, 1994, familiarity with which is assumed, the court denied the motion, saying that the claim was not moot absent a showing that the allegedly wrongful behavior could not reasonably be expected to recur. *U.S. v. New York City Transit Authority,* 846 F.Supp. 227, 228 (E.D.N.Y.1994). The court thereafter denied a motion for reargument. *U.S. v. New York City Transit Authority,* Memorandum and Order, No. CV 93–3354 (E.D.N.Y. May 12, 1994).

III

The Authority again urges that the case is moot.

As noted in the court's May 17, 1994 decision, "voluntary cessation of allegedly illegal conduct does not ... make the case moot." *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). In order to show that a case "no longer presents a live, justiciable controversy" a defendant has the heavy burden of establishing that "it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Consolidated Edison Co. v. New York State Dep't of Envtl. Conservation,* 726 F.Supp. 1404, 1408 (S.D.N.Y.1989) (citations omitted).

The Authority argues that the Supreme Court in *W.T. Grant* said that where a

defendant claims a case is moot because the allegedly unlawful conduct ceased before the litigation began, the plaintiff has the burden of showing a "probability of resumption."

There is no basis for this argument. Indeed, the Supreme Court in *W.T. Grant* stated that a defendant has a "heavy" burden to "demonstrate" that there is "no reasonable expectation" that the wrong will be repeated. 345 U.S. at 633, 73 S.Ct. at 897. The language in the opinion which the Authority quotes out of context is found in a footnote reading, in relevant part,

> "It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption."

*Id.*, at 632, 73 S.Ct. at 897 n. 5 (quoting *United States v. Oregon State Medical Society*, 343 U.S. 326, 333, 72 S.Ct. 690, 695, 96 L.Ed. 978 (1952)).

The government has no burden to prove a "probability of resumption" of the policy, especially in light of the Authority's abandonment of the old policy only in the face of imminent, anticipated litigation.

■ Vice President Leslie states that he is "aware of no discussions, let alone plans, to revoke ... or otherwise to modify" the new policy. *See* Leslie Supp. Aff., ¶ 3. That statement does not show, nor does the passage of time, that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *Consolidated Edison*, at 1408. The court finds no reason to change its prior ruling.

## IV

Under Federal Rule of Civil Procedure 56(c) the court will grant summary judgment if the evidence shows that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court views the record in the light most favorable to the non-movant and resolves all ambiguities and draws all reasonable inferences against the movant. *United States v.*

*Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987).

■ The government says the facts before the court are sufficient to determine that the practices under the old policy constitute unlawful discrimination in violation of Title VII. The Authority argues that that policy does not violate Title VII.

■ Section 704(a) of Title VII provides, in relevant part, that it is "an unlawful employment practice for an employer to discriminate against" any of its employees "because" the employee has "participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a). To make a prima facie showing of such discrimination under this section a plaintiff must show: (1) the employer's awareness that the employee has participated in such an investigation, proceeding, or hearing, (2) adverse employment action against the employee who did so participate, and (3) a causal connection between that participation and the adverse employment action. *See Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir.1990).

■ Obviously filing an employment discrimination charge with federal, state or local fair employment practices agencies is a protected activity under Title VII. *See*, 42 U.S.C. § 2000e–3(a); *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir.1991); *EEOC v. General Motors Corp.*, 826 F.Supp. 1122, 1125–27 (N.D.Ill.1993). The Authority admits the causal link between this protected activity and the policy challenged here.

The only question is whether the challenged policy embodies "adverse employment action" within the meaning of Title VII.

Several courts have held that similar but not identical employment practices constitute unlawful discrimination. In *Johnson v. Palma*, 931 F.2d 203 (2d Cir.1991), the Second Circuit Court of Appeals held it unlawful for a union to refuse to process an employee's grievance against the employer because the employee also filed a charge of employment discrimination with an outside agency. *Id.*,

at 207–208. *See also, EEOC v. Board of Governors of State Colleges and Universities,* 957 F.2d 424 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 299, 121 L.Ed.2d 223 (1992) (termination of grievance procedure for filing charge with outside agency is unlawful discrimination under comparable provisions of the Age Discrimination and Employment Act, 29 U.S.C. § 621, *et seq.* (ADEA)); *Owens v. New York City Housing Authority,* 1994 WL 97411 *3 (S.D.N.Y.1994) (employee is entitled under the ADEA "to the same opportunity to resolve disciplinary charges enjoyed by other employees who may not have filed an EEOC complaint"); *EEOC v. General Motors Corp.,* at 1126 (suspending "open door" internal dispute resolution process if an employee filed a charge with an outside agency is unlawful under Title VII and the ADEA as it "strips a benefit from an employee for filing with the agency").

It is true that those cases involved denial of access to the only available internal grievance mechanism. Here internal complaints were not ignored but were transferred to the Law Department. *Cf.* Def.'s Rule 3(g) Statement, Leslie Supp. Aff. ¶ 4. But that does not mean that the policy at issue had no adverse consequences.

Nor does it matter that few complaints may have been actually transferred to the Law Department, or that the Law Department "not only in fact investigated but successfully resolved informally" some of these transferred complaints, or that the government does not seek any relief for, nor allege any identifiable harm to, any of these individuals. It is not significant that the internal procedure is a privilege rather than a right of employment, or that the employer's action may have had a neutral or even a beneficial effect on individual employees. *See General Motors Corp.,* at 1126; *Owens,* at *3.

The test for purposes of determining whether the policy embodied "adverse employment action" is not whether a given employee might have fared as well before the Law Department as before the Division. The test is whether the Authority deprived some employees of an opportunity that it accorded to all others.

Of course, it seems unlikely that the Law Department can provide employees with the same opportunities to resolve disputes as can the Division. The Law Department handles on behalf of the Authority employment discrimination complaints filed with outside agencies. Thus the Law Department apparently acted both as a neutral fact finder and mediator with respect to the employee's internal complaint, and as adversary counsel representing the Authority with respect to the same employee's externally filed complaint. To say the least this suggests that the Law Department has a conflict of interest. It can hardly provide to employees the same type of consideration as can the Division.

But even if the Law Department could do as well for an employee as the Division, that employee when denied access to a process available to other employees has been subjected to an adverse employment action.

The government has established a prima facie case of discrimination under Title VII. The Authority has not, and cannot, overcome the presumption of discrimination by articulating a "legitimate, nondiscriminatory reason" for the policy. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). On its face the policy treated employees differently because they did something Title VII entitled them to do.

Seizing on the word "retaliation", which does not appear in section 704(a), the Authority engages in an excursion into etymology. It refers to the dictionary definition of the word, its "earliest use" in 1581, and its Latin root, to suggest that "retaliation" involves "paying back" with harm or at least disadvantage in recompense for harm a wrongdoer has committed. In a word the Authority says that there must be an element of reprisal, "an eye for an eye."

What has already been said shows how irrelevant this argument is. The "harm" of the policy was to take away an opportunity from some employees that other employees had. To take away that opportunity is unlawful discrimination whether or not the Authority intended to "disadvantage" those whom it deprived. *See Board of Governors,*

at 428 (discrimination unlawful "regardless of the employer's intent").

## V

The Authority's motions to dismiss and for summary judgment are denied. The government's motion for summary judgment is granted. The Transit Authority is permanently enjoined from reinstating its former policy concerning the investigation and resolution of internally filed discrimination complaints, as stated in this memorandum and order.

SO ORDERED.