Frank J. SOTOLONGO, Plaintiff,

v.

**NEW YORK CITY TRANSIT AUTHORITY, Defendant.**

No. 96 CIV. 3754 (JES).

United States District Court,
S.D. New York.

Aug. 25, 1999.

Frank J. Sotolongo, Miami, FL, pro se.

Martin B. Schnabel, Vice–President and General Counsel, New York City Transit Authority, Brooklyn, NY, Edward F. Zagajeski, of counsel, for Plaintiff.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Frank J. Sotolongo, a former employee of the New York City Transit Authority ("TA"), proceeding *pro se,* brings the instant action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the

Age Discrimination in Employment Act, 29 U.S.C.A. § 623, *et seq.* ("ADEA"), and the Americans with Disability Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"). Plaintiff alleges that the TA wrongfully suspended him from employment without pay from February 14, 1995, to June 13, 1995, and wrongfully held him out of service from June 13, 1995, to August 23, 1997, on the basis of his national origin, age, and disability and in retaliation for his complaints about discrimination. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the TA moves for summary judgment. For the reasons stated below, the TA's motion for summary judgment is granted.

## BACKGROUND

Plaintiff, a Cuban male born on October 13, 1934, commenced employment with the TA as a janitor on July 7, 1987. *See* Affidavit of Frank J. Sotolongo in Opposition to Defendant's Motion for Summary Judgment, dated January 16, 1998 ("Sotolongo Aff."). Plaintiff is a member of the Transport Worker's Union, Local 100 ("TWU"). The TWU and the TA have entered into a collective bargaining agreement ("CBA"), that provides, *inter alia*, a multi-step grievance procedure. The CBA also provides that the TA's Medical Services Division be responsible for determining the fitness of an employee to perform his job. *See* Defendant's Notice of Motion for Summary Judgment, dated August 7, 1998 ("Def.Exh. __"), Agreement between New York TA, Manhattan and Bronx Surface Transit Operating Authority and Transport Workers Union of America, AFL–CIO and Transport Workers Union of America, Local 100, AFL–CIO, dated July 1, 1994 ("CBA"), Def. Exh. 1.

During plaintiff's employment with the TA, he was disciplined at various times and received warnings, reprimands and suspensions. As early as September 1988, plaintiff received a warning for failing to perform routine duties and for falsifying a Cleaner Activity Report. In March 1993, plaintiff received a warning for refusing a direct order from his supervisor to work four hours of mandatory overtime during a snow emergency. In April 1994, plaintiff was suspended for one day for failing to remove graffiti as instructed by his supervisor. Plaintiff accepted these penalties without attempting to challenge the discipline through the grievance procedure under the CBA. *See* Disciplinary Action Notification of Frank Sotolongo, dated September 8, 1988, Def. Exh. 2; Disciplinary Action Notification of Frank Sotolongo, dated March 18, 1993, Def. Exh. 3; and Disciplinary Action Notification of Frank Sotolongo, dated April 26, 1994, Def. Exh. 4; *see also*, Plaintiff's Deposition Transcript, dated April 9, 1998 ("Pl.Dep.Transcript"), 42–3, Def. Exh. 5.

In July 1993, plaintiff was referred to the TA's Employee Assistance Program ("EAP") by a physician associated with the TA's Medical Services Division. *See* Request for Medical Examination of Employee from TA Medical Services Division, dated July 22, 1993, Def. Exh. 6. A subsequent psychological evaluation of plaintiff found that he appeared unstable and experienced borderline delusional thinking. The examining psychologist recommended that plaintiff receive neurological and psychiatric consultations and that he not return to work. *See* TA Employee Assistance Program Mental Status Assessment and Recommendations, dated July 29, 1993, Def. Exh. 7. A psychiatric consultant for the TA then conducted a second examination of plaintiff and reported that he had suffered from a paranoid delusional episode and that he should be treated with low dose medication. This psychiatrist believed that plaintiff could return to work with proper treatment. *See* Psychiatric Evaluation and Report from Ted E. Becker, Jr., M.D., dated September 28, 1993, Def. Exh. 9.

On July 10, 1994, plaintiff requested a leave of absence, stating that depression rendered him unable to perform his job. *See* Letter from Frank J. Sotolongo to Charles Glasgow, Director of TA Labor

Relations, dated July 10, 1994, Def. Exh. 10. On July 17, 1994, plaintiff's Station Supervisor reported to TA Labor Relations that plaintiff had refused an order to perform certain tasks, threatened to quit his job, and then walked off the job. *See* Report, dated July 18, 1994, Def. Exh. 11. Plaintiff proceeded to report to the TA Labor Relations office and met with Dennis Ryan, Assistant Director of Labor Relations, and Lucas Rodriguez, Manager of Labor Relations. Both Ryan and Rodriguez were, at the time, over age 50, and Rodriguez is Hispanic. Plaintiff told them that he felt depressed and sick and that he would resign if the TA did not permit him to take a leave of absence. They explained his rights under the Family Medical Leave Act[1] and gave him forms to apply for a FMLA leave of absence. *See* Def. Exh. 11.

On July 18, 1994, plaintiff filed an application for a 60-day leave of absence. In support of his application, plaintiff submitted a report from Juan A. Olivera, M.D., stating that plaintiff suffered from a depressive state disorder and that plaintiff should be referred for psychiatric evaluation. *See* Request and Notification for Family and Medical Leave, dated July 18, 1994, Def. Exh. 12. On July 26, 1994, plaintiff's request for the FMLA leave of absence was approved. *See* Letter from Lucas Rodriguez, Manager of TA Labor Relations, dated July 26, 1994, Def. Exh. 13. Plaintiff returned to work on September 14, 1994, after an evaluation at the Medical Services Division found that he was capable of returning to work. *See* Request for Medical Examination of Employee, dated September 12, 1994, Def. Exh. 14.

On February 14, 1995, a TA Station Supervisor reported that plaintiff, in the presence of a co-worker, refused to follow an order and threatened to quit his job. While plaintiff proceeded to shout and throw his cleaning materials in the station, the station supervisor telephoned for assistance. Plaintiff then approached the supervisor, who asked plaintiff to speak to another supervisor on the telephone. Plaintiff then stated, "If anyone bothers me, black, blue or green, I'm going to cut them in the face." *See* Correspondence Sheet of Patricia Bassett, TA Station Supervisor, dated February 14, 1995, Def. Exh. 15; Correspondence Sheet of Stephen Everett, Rail Road Clerk, dated February 14, 1995, Def. Exh. 16; Report of Frank J. Sotolongo, dated February 15, 1995 ("Sotolongo Report"), Def. Exh. 17. As a result of this incident, the TA brought disciplinary charges against plaintiff, suspended him without pay from February 15, 1995, and commenced proceedings to terminate plaintiff's employment. *See* Disciplinary Action Notification of Frank J. Sotolongo, dated February 14, 1995, Def. Exh. 18. In addition, police officers from the New York City Police Department arrested plaintiff, taking from him at the time of arrest a Swiss army knife and two box cutters. *See* NYPD Property Clerk's Invoice, dated February 14, 1995, Def. Exh. 19. Plaintiff claims that the arresting officer said, "Cuban, you suffered a lot in Cuba, you are going to suffer more in America." *See* Pl. Dep. Transcript, 144, Def. Exh. 5. The criminal charges were later dismissed. The EAP interviewed plaintiff and determined that he required psychiatric evaluation, ongoing counseling, and possibly medication in order to return to work. *See* Mental Status Assessment and Recommendations, dated February 23, 1995, Def. Exh. 22.

Plaintiff and the TWU challenged the disciplinary charges through the CBA grievance procedures. In a decision dated June 12, 1995, the Tripartite Arbitration Board found plaintiff guilty of the charges but modified the penalty of dismissal to suspension for the four months already served. The Board conditioned its award upon plaintiff's cooperation in any psychological evaluation and treatment ordered by the EAP. *See* Decision of Arbitration

---

1. Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*, ("FMLA").

Board of NYC Transit Authority/Transport Workers Union, dated June 13, 1995, Def. Exh. 23.

In July 1995, plaintiff underwent another psychological evaluation by a TA psychiatric consultant. The examining psychiatrist concluded that he had a long-standing delusional paranoid disorder and that his prognosis was poor because plaintiff refused to take anti-psychotic medicine. The psychiatrist further reported that plaintiff did not get along with others and that his angry and resentful manner and evident dislike of others led to confrontations and arguments. *See* Psychiatric Evaluation of Ted E. Becker, Jr., M.D., dated July 25, 1996, Def. Exh. 25. Thereafter, plaintiff wrote a letter to the psychiatrist stating that he refused to undergo another evaluation with him in the future. *See* Letter from Frank J. Sotolongo to Ted E. Becker, Jr., M.D., dated October 2, 1995, Def. Exh. 24.

On the recommendation of an EAP counselor, plaintiff was examined by a TA doctor for a return-to-work evaluation on December 1, 1995. This doctor found plaintiff psychologically unfit to work. *See* TA Medical Services Progress Report for Clinic of Frank J. Sotolongo, dated December 1, 1995, Def. Exh. 28. Plaintiff countered with a letter from his own psychiatrist, stating that plaintiff had "no psychiatric abnormalities whatsoever" and that he could return to work. *See* Letter to TA from Robert Conciatori, M.D., dated November 29, 1995, Def. Exh. 27. After receiving plaintiff's medical records and the Transit Authority's psychiatric evaluations, however, Dr. Conciatori later rescinded his prior evaluation. *See* TA Authorization for Medical Records Release to Robert Conciatori, M.D., dated December 1, 1995, Def. Exh. 29.[2]

On December 5, 1995, the TA issued new disciplinary charges against plaintiff for refusing to cooperate in the psychological evaluation and treatment ordered by the EAP pursuant to the Tripartite Arbitration Board's award and commenced proceedings to terminate plaintiff's employment. *See* TA Disciplinary Action Notification of Frank J. Sotolongo, dated December 6, 1995, Def. Exh. 31. Plaintiff and the TWU appealed to the Tripartite Arbitration Board. The Tripartite Arbitration Board determined that plaintiff had complied with the June 2, 1995 award and had followed the directives of the EAP program. The arbitration award directed that plaintiff be returned to work upon a finding by Dr. Conciatori that he was fit for duty, unless the TA determined on a reasonable medical basis that such a finding was clearly wrong. *See* Decision of Arbitration Board, NYC Transit Authority/Transport Workers Union, dated August 14, 1996, Def. Exh. 33.

On January 30, 1997, Dr. Conciatori and a TA physician reported that plaintiff was making improvements and was able to return to work. *See* Letter from Robert Conciatori, M.D., dated January 30, 1997, Def. Exh. 34. Yet when TA Medical Services told plaintiff that he needed to see the TA psychiatric medical consultant, plaintiff refused and left the medical center before an evaluation could be completed. *See* TA Medical Services Progress Report of Frank J. Sotolongo, dated April 18, 1997, Def. Exh. 35. On July 31, 1997, after plaintiff agreed to further evaluation, the psychiatric consultant for the TA diagnosed plaintiff as having a long-standing delusional disorder. That consultant further concluded that plaintiff did not get along with others, that his angry and resentful manner led to confrontations, and that plaintiff refused to acknowledge that he had a psychological problem or to take any anti-psychotic medication. Finally, the consultant found that plaintiff's prog-

---

2. In a subsequent letter, Dr. Conciatori qualified his initial assessment as based solely on a medical history provided by plaintiff and re-diagnosed plaintiff as suffering from a delu-sional disorder, mixed type, requiring psychotherapy. *See* Letter from Robert Conciatori, M.D., to C. Clarke–Belgrave, M.D., dated July 23, 1996, Def. Exh. 30.

nosis was poor and that he needed a trial of anti-psychotic medicine and a psychiatric follow-up before he could return to work. *See* Psychiatric Evaluation of Ted E. Becker, M.D., dated July 31, 1997, Def. Exh. 37. Plaintiff was subsequently prescribed medication that controlled his symptoms and was determined to be sufficiently stable to return to work. *See* Medical Services Report of Robert Conciatori, M.D., dated August 17, 1997, Def. Exh. 39. Plaintiff returned to work on August 23, 1997. *See* Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, dated August 7, 1998 ("Def. Memo. For Summary Judg."), 13.

On or about October 29, 1997, plaintiff reported that he had injured his back on October 21, 1997, while working and complained of pain in his lower back and legs. Plaintiff was found to be disabled and has since received worker's compensation benefits. He was placed on a leave of absence without pay. *Id.*

This litigation arises from a charge of employment discrimination plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") on April 19, 1996. Plaintiff charged the TA with employment discrimination on the basis of age and national origin and with retaliation. *See* EEOC Charge of Discrimination, dated April 19, 1996 ("EEOC Complaint"), Def. Exh. 40. On May 14, 1996, the EEOC dismissed plaintiff's charge of age and national origin discrimination as untimely and provided plaintiff a "right to sue" letter. *See* EEOC Dismissal and Notice of Rights, dated May 14, 1996 ("EEOC Dismissal"), Def. Exh. 41. Plaintiff then filed a *pro se* complaint in the Southern District of New York on May 20, 1996, alleging employment discrimination based on age

and national origin and retaliation. In addition, plaintiff pled a claim for disability discrimination that was not included in the original charge filed with the EEOC.

On February 3, 1997, the TA moved to dismiss the complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim because plaintiff did not file his charge with the EEOC within the statutory time period. *See* Defendant's Memorandum of Law in Support of Motion to Dismiss, dated February 3, 1997. The Court denied defendant's motion on February 13, 1998.[3] On August 13, 1998, the TA filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., in which it asserts that plaintiff cannot establish a prima facie case for discrimination or retaliation and that defendant had legitimate, non-discriminatory reasons for its actions in suspending and subsequently holding plaintiff out of service. *See* Def. Memo. For Summary Judg. Plaintiff filed a *pro se* memorandum of law and affidavit in opposition to the TA's motion for summary judgment in which he reasserted his claims of age, national origin and disability discrimination. Plaintiff does not dispute the TA's version of the history of disciplinary action taken against him or that he was repeatedly diagnosed as suffering from psychotic delusions. Plaintiff does, however, dispute the TA's underlying motives in suspending and subsequently dismissing plaintiff, claiming that the TA's adverse employment action was motivated by plaintiff's minority status, age and disability.

### DISCUSSION

A court may grant summary judgment only if it determines that there are no genuine issues of material fact after a re-

---

**3.** The TA argued, *inter alia.* that plaintiff's charge was untimely because plaintiff's time to file began to run on February 15, 1995, when the TA suspended plaintiff and brought disciplinary charges against him seeking his dismissal, relying upon *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). In a decision from the

bench, the Court denied defendant's motion because the record before the Court on defendant's motion did not reveal whether the February 15, 1995, employment action constituted a final determination or was merely a recommendation that required further proceedings to become effective.

view of the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. *See* Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When ruling on a summary judgment motion, a court must construe the facts in a light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no genuine issue as to any material fact exists, the moving party is entitled to summary judgment as a matter of law. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

### Plaintiff's Title VII and ADEA Claims

Defendant offers two separate grounds upon which the Court should dismiss plaintiff's claims of employment discrimination based on national origin and age. First, the TA argues that plaintiff fails to establish a *prima facie* case of either national origin or age discrimination. Second, the TA argues that plaintiff fails to offer any evidence that the reasons set forth by the TA for suspending and holding plaintiff out of service were merely a pretext for employment discrimination.

 To prevail on a claim of either national origin discrimination under Title VII or age discrimination under the ADEA, the plaintiff first bears the burden of establishing a *prima facie* case. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This burden, however, is a light one. *See Chertkova v. Connecticut General Life Insurance Co.,* 92 F.3d 81, 87 (2d Cir.1996). A plaintiff establishes a *prima facie* case by showing (1) that he is a member of a protected class; (2) that he was qualified for the position he held; (3) that there was an adverse employment action taken against him; and (4) that the

position remained open and the employer continued to seek applicants with the plaintiff's qualifications. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. A plaintiff who establishes a *prima facie* case has set forth sufficient facts upon which a finding of discrimination by the employer can be predicated. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The burden then shifts to the defendant to "articulate some legitimate non-discriminatory reason for the employee's rejection." *McDonnell Douglas,* 411 U.S. at 792, 93 S.Ct. 1817. If the defendant does so, then the plaintiff must establish that the action taken against him was the result of unlawful discrimination. *See id.*

 In this case, plaintiff's discipline and suspension were amply supported by his well-documented psychological problems, threats of violence, and history of insubordination. Thus, quite aside from whether or not plaintiff has carried his burden of showing a *prima facie* case of discrimination, it is abundantly clear that in the face of that proof plaintiff has come forward with no facts that would sustain a rational finding of discrimination.

The facts elicited by the TA support its claim that plaintiff was suspended because of the violent threat he made to his supervisor on February 14, 1995, that he would "cut" someone, a threat plaintiff admits having made. *See* Pl. Dep. Transcript, 84–86, Def. Exh. 5; Sotolongo Report, Def. Exh. 17. Moreover, the evidence likewise establishes that the TA had valid concerns about plaintiff's erratic behavior prior to the suspension and a well-founded belief that he was unable to work because of mental illness. *See id.* Indeed, the physicians in the TA's Medical Services Division, the EAP psychologists and counselors, and the TA's psychiatric consultant all reported that plaintiff was not psychologically fit for work. In addition, the TA

notes that on several occasions plaintiff refused the conditional medical treatment ordered by the EAP. *See* Def. Exh. 35.

Plaintiff offers no evidence that defendant's proffered reasons were merely a pretext for employment discrimination. There is no evidence even that plaintiff's supervisors were even aware of plaintiff's national origin. Although plaintiff emphasizes that the police officer who arrested him on February 14, 1995, referred to plaintiff's national origin, this officer was not a TA employee. In fact, in his deposition, plaintiff conceded that his supervisors did not know his ethnicity. *See* Pl. Dep. Transcript, 144–146, Def. Exh. 5. Plaintiff admitted that the only basis for his national origin discrimination claim was that he "was the only person from Cuba cleaning the floor" for the TA. However, plaintiff had never sought to determine the national origin of the other cleaners employed by the TA and based his observation solely upon the cleaners he had happened to meet while working for the TA. *See* Pl. Dep. Transcript, 144–146, Def. Exh. 5. As for plaintiff's claim of age discrimination, although plaintiff claims that his co-workers called him "old man," such comments offer no evidence of bias by his supervisors. In fact, the supervisors about which plaintiff complains, Ryan and Rodriguez, were both over age 50 at the time plaintiff was suspended. Thus, in the absence of any evidence to support plaintiff's claim, this Court must grant the TA summary judgment with respect to plaintiff's national origin and age discrimination claims.

### Plaintiff's ADA claim

■ The enforcement provisions of Title VII of the Civil Rights Act of 1964 are applicable to actions brought under the ADA. *See* 42 U.S.C. § 12117(a). Thus, under the ADA, as under Title VII, a plaintiff must file a charge of discrimination with the EEOC prior to commencing an action for employment discrimination in federal court. *See* 42 U.S.C. § 2000e–5(e)(1); *see also Butts v. City of N.Y. Dept. of Housing Preservation and Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993). A plaintiff's

failure to file a charge of discrimination with the EEOC deprives this Court of subject matter jurisdiction over the claim. *See id.* A plaintiff may litigate claims not specifically alleged in an EEOC charge only where the unalleged claims are sufficiently related to the allegations in the charge. *See Butts,* 990 F.2d at 1402. A claim will be deemed to be sufficiently related to the original charge where "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.*

■ Under this standard, plaintiff's claim of disability discrimination must be dismissed. Plaintiff never filed a charge of disability discrimination with the EEOC, and the claims he did bring before the EEOC are completely unrelated to his claim of disability discrimination. Plaintiff does not explain, and this Court cannot discern, any connection between plaintiff's claims of age and national origin discrimination and his claim of disability discrimination. Therefore, the Court must dismiss plaintiff's disability discrimination claim.

### Plaintiff's Retaliation Claim

■ To establish a *prima facie* case of retaliation, a plaintiff must show (1) that he was engaged in protected activity challenging the employer's alleged discrimination; (2) that the employer was aware of the activity; (3) that there were adverse employment actions taken against him; (4) and that there was a causal connection between the adverse employment action and the protected activity. *Manoharan v. Columbia University College of Physicians and Surgeons,* 842 F.2d 590, 593 (2d Cir.1988). Where plaintiff makes a *prima facie* case, defendant must state a non-retaliatory reason for its decision. *Johnson v. Palma,* 931 F.2d 203, 207 (2d Cir. 1991). In response, plaintiff must show that the proffered reason was a mere pretext for retaliation. *See id.*

■ Plaintiff has failed to establish the elements necessary to set forth a *prima facie* case of retaliation. First, plaintiff

fails to present evidence that he was engaged in protected activity challenging his employer's alleged discrimination. Indeed, plaintiff does not even identify the activity that motivated the TA's retaliation against him. Second, even if plaintiff had engaged in protected activity, plaintiff offers no evidence to rebut defendant's legitimate, non-discriminatory reasons for suspending plaintiff and holding him out of service. Although, as set forth above, the TA has offered extensive evidence to support its claimed reasons for suspending and disciplining plaintiff, plaintiff has offered no evidence that suggests the TA sought to retaliate against him for any reason, much less for any challenge by plaintiff to the TA's alleged discrimination. Thus, plaintiff's claim of retaliation must also be dismissed.

## CONCLUSION

For all the foregoing reasons, the Court grants defendant's motion for summary judgment. The Clerk of the Court is directed to enter Judgment accordingly and to close this action.

It is **SO ORDERED.**